POWERS v. JOURNEYMEN BRICKLAYERS' UNION No. 3 et al.

(*Knoxville.* September Term, 1914.)

1. **TRADE UNIONS. Validity of labor union.**

A labor union organized for the purposes of regulating the wages of its members and protecting them in their contracts and the promotion of their interests as laboring people is lawful. (*Post, p.* 646.)

Cases cited and approved: Rohlf v. Kasemeier, 140 Iowa, 182; Lohse Patent Door Co. v. Fuelle, 215 Mo., 421; Beck v. Protective Union, 118 Mich., 497; Thomas v. Cincinnati, etc., R. Co., 62 Fed., 803; Jacobs v. Cohen, 183 N. Y., 207; Mills v. U. S. Printing Co., 99 App. Div., 605.

2. **TRADE UNIONS. Fixing wages. Failure to notify contractor. Recovery of damages.**

Where a labor union had absolute control over the labor market in respect of the services of bricklayers, fixed the term of employment and the wages at the beginning of each calendar year, and the bricklayers all agreed thereto by becoming members of the union, a contractor, notified of the rate by the union, who employs bricklayers individually at wages fixed by the union, may recover from the union the loss occasioned by continuing to pay the men at that rate after the union had lowered the rate, but had not notified the contractor. (*Post, pp.* 646-648.)

3. **PLEADING. Speaking demurrer. Action against labor union.**

In an action for loss occasioned by a contractor became defendant, a labor union, lowered the rate of wages without notifying the contractor, a demurrer to the complaint that such injury as occurred was necessarily suffered not by the contractor, but by the persons with whom he contracted for the erection of the buildings, is a speaking demurrer, and hence bad. (*Post, p.* 648.)

4. INJUNCTION. Demurrer.

In a suit to recover the loss occasioned by a contractor because defendant, a labor union, lowered the rate of wages without notifying the contractor, a demurrer will not lie to that part of the bill asking an injunction against the union's withdrawing certain funds it had in the bank; since the proper remedy is motion to dissolve. (*Post*, p. 649.)

5. TRADE UNIONS. Right to sue. Pleading.

An unincorporated labor union may not, as such, be made a party, and, if a few of the members are made parties, it should be alleged in the bill that they were made parties as representing the others of the same class. (*Post*, p. 649.)

Cases cited and approved: Pickett v. Walsh, 192 Mass., 572; Brown v. Brown, 86 Tenn., 277; Fidelity & Guaranty Co. v. Rainey, 120 Tenn., 357.

BUCHANAN, J., dissents.

FROM KNOX.

Appeal from the Chancery Court of Knox County.— W. D. WRIGHT, Judge.

BURROWS & HODGES, for appellant.

GREEN, WEBB & TATE, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The case stated by the bill is this: The defendant union is composed of all of the bricklayers in Knoxville and vicinity. Under the terms of the organization there is devolved upon it the duty of fixing the rate

Powers v. Bricklayers Union.

of wages for all of its members for each year in advance. The union fixes this scale about the beginning of the calendar year, and gives notices to contractors before the employment or union year begins, which runs from the 1st of May of any given calendar year to the last day of April of the following year. The complainant is a contractor in Knoxville, and necessarily has to employ the members of the union to work for him in carrying out his contracts, as he can obtain no others. He received a notice in the early part of the year 1910 that the regular wage for the ensuing union year would be sixty-two and one-half cents per hour. On the faith of this notice, and accepting the terms, he employed certain of the members, and for a series of months paid them at the rate of sixty-two and one-half cents, without any knowledge or notice that the rate had been changed by the union, after it had been given to him. The fact was, however, that after he had been notified of the sixty-two and one-half-cent-rate, and had employed the men, the union changed the rate to fifty-six and one-fourth cents per hour, but gave complainant no notice. In ignorance of the change, he continued to pay his employees at the rate of sixty-two and one-half cents, the result of which was that he suffered a loss of $322.59 difference in his profits between the fifty-six and one-fourth-cent and sixty-two and one-half-cent wage. He sues for this sum.

There was a demurrer filed which raised the point that the above facts did not state a cause of action.

The chancellor and the court of civil appeals so held. We think they were both in error.

A labor union organized for the purpose of regulating the wages of its members and protecting them in their contracts and the promotion of their interests as laboring people is lawful. *Rohlf* v. *Kasemeier,* 140 Iowa, 182, 118 N. W., 276, 23 L. R. A. (N. S.), 1284, 132 Am. St. Rep., 261, 17 Ann. Cas., 750; *Lohse Patent Door Co.* v. *Fuelle,* 215 Mo. 421, 114 S. W., 997, 22 L. R. A. (N. S.), 607, 128 Am. St. Rep., 492; *Beck* v. *Railway Teamsters' Protective Union,* 118 Mich., 497, 77 N. W., 13, 42 L. R. A., 407, 74 Am. St. Rep., 421; *Thomas* v. *Cincinnati, etc., R. Co.,* 62 Fed. (C. C.), 803. It has even been held that it is lawful for a single employer to contract with a labor union that he will employ only union men. *Jacobs* v. *Cohen,* 183 N. Y., 207, 75 N. E., 5, 2 L. R. A. (N. S.), 292, 111 Am. St. Rep., 730, 5 Ann. Cas., 280; *Mills* v. *U. S. Printing Co.,* 99 App Div., 605, 91 N. Y. Supp., 185.

The situation in Knoxville, under the allegations of the bill, was such that the union had absolute control of the labor market in respect of the services of bricklayers, fixed the terms of employment and the wages, and the bricklayers all had agreed thereto by becoming members of the union which exercised this power. The result was that the complainant was bound to accept these terms if he employed any of their men. He could employ no other. Now, while each several contract of employment was made with the men who agreed to work for him, and while they might accept

his employment or refuse it, yet, if a contract was made between them and the complainant, it was bound to be on the terms fixed by the union. So, while there was no contract between the union and the complainant for the services of the men who worked for him, yet the relation established by the facts existing at the time was the same in practical effect and result as if he had agreed with the union to employ no one but its members. Possessing the power, as it did, to make it impossible for the complainant to employ any member except on terms fixed by it, and having assumed, as a part of the duty imposed, the obligation to give notice of the terms on which contractors were authorized and expected to rely, the duty was likewise imposed on the union by necessary implication of law to give notice of any change made in these rates which would affect the rights of contractors justified in acting under a previous notice. To hold differently would authorize the conclusion that the union could with impunity use its lawful powers for the purpose of enabling its members to practice a fraud on contractors who justly relied on, and were expected to rely on, its representations or notices as to the rate of wages. In issuing these notices the union necessarily informed contractors that they were final, and were to be the basis of contracts, or at least were to continue for the period fixed in the notice, unless changed by the same power which issued the notice. When the union so issued a notice knowing it must be and would be relied on by the contractor, and issued it for the purpose

of having it relied on, and it was relied on and acted on by the contractor to his prejudice because of a subsequent change made without notice, the liability arose against the union to make good the injury so caused. The notice of the rate fixed for a year was a continuing representation on the part of the union that such was the agreed basis of contract with the men for the whole year, and upon a subsequent change of the basis without notice to the contractor such former notice thereafter operated as a continuing misrepresentation, and, being relied on by the contractor to his prejudice, raised a cause of action against the party making such misrepresentation—that is, the union. The failure to give the notice of the change in the rate naturally resulted in such damage as is claimed by the complainant in the present case, and of this the union was bound to take notice.

There is a ground of demurrer to the effect that such injury as occurred was necessarily suffered not by the contractor, but by the persons with whom he contracted for the erection of buildings; this on the assumption that he figured the cost of the wages into the price of his work. This is a speaking demurrer, and hence bad, because there is nothing in the bill to justify it. On the contrary, there was an amendment to the bill in which the complainant stated, in effect, that in getting his contracts for work he was compelled to compete with other bidders, and obtained the contracts, if at all, at the lowest prices, and in this way the difference in the wages came out of his profits.

There is another ground of demurrer directed to those parts of the bill which lay the basis for an injunction against the union's withdrawing certain funds it has in bank. This is not a proper matter for demurrer, but for motion in the court below to dissolve the injunction. Such a motion was made and disallowed.

Before closing the opinion we should say that it appears from the bill that the union is an unincorporated association. As such, of course, it cannot be made a party. *Pickett* v. *Walsh,* 192 Mass., 572, 78 N. E., 753, 6 L. R. A. (N. S.), 1067, 1081, 116 Am. St. Rep., 272, 7 Ann. Cas., 638. To avoid this difficulty the complainant made sundry members of the union parties defendant, stating that these were all he could learn the names of. It is not distinctly alleged in the bill that these were made defendants as representing all others of the same class—that is, standing for the union. *Pickett* v. *Walsh,* supra; *Brown* v. *Brown,* 86 Tenn., 277, 279, 310, 6 S. W., 869, 7 S. W., 640; *Fidelity & Guaranty Co.* v. *Rainey,* 120 Tenn., 357, 384, 113 S. W., 397. Proper allegations, however, can be made on this subject when the case again reaches the chancery court on the remand.

On the ground stated we are of the opinion that both the chancery court and the court of civil appeals committed error in dismissing the bill. Their decrees are therefore reversed and the cause remanded, to the end that the amendment above mentioned may be made, and that an answer may be filed and proof heard.

BUCHANAN, J., dissents.