BARNES *v.* FORT *et al.*

(*Nashville,* December Term, 1943.)

Decided June 10, 1944.

Rehearing Denied July 1, 1944.

524

Charles Willett, of Springfield, for complainant-appellee.

A. L. Dorsey and John D. Sprouse, both of Springfield, for defendant-appellant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainant filed his original bill in the Chancery Court of Robertson County against the defendant C. H. Fort, individually, and as the representative of the Adams Jersey Cattle Association, unincorporated, to recover on a note executed by Fort, President, and Reams D. Farmer, Secretary of the Association, for $2100. The bill alleges that the note was authorized by the members of the Association and the proceeds thereof were used to purchase thoroughbred cattle, said Association being a voluntary, unincorporated organization. The prayer of the bill is that defendant Fort be served with process, etc., and that "a decree be entered against him individually and as the representative of the class aforesaid." The defendant demurred to the bill upon the grounds (1) no equity on the face of the bill; (2) the suit is unknown to the practice and procedure in Tennessee; (3) the bill seeks a personal judgment against an unincorporated association without service of process on its members; (4) the bill shows that the Association is a partnership and does not make the members parties defendant; (5) the bill does not allege that the members are so numerous that it would be impracticable to name them as parties defendant. The Chancellor overruled the demurrer with the right to defendant to rely upon it in his answer. Thereupon he filed his answer, relying upon the demurrer and also as a cross-bill against complainant Barnes, and also made a number of citizens residing in Robertson, Montgomery, and Davidson Counties parties defendant, alleging that they were members of the Association. The defendant denied that he and Reams D. Farmer, individually, executed the note set out and described in the bill, but averred that "said note was executed only for and

on behalf of the Adams Jersey Cattle Association.'' It was further averred: ''He does not know the extent or details as to the assets of the Association.''

Process was served upon all the defendants named in the cross-bill as members of the Association. On December 24, 1932, defendant filed an amended cross-bill in which it was prayed that all members of the Association (giving their names) residing in Robertson County be served with process. It appears that one E. W. Robertson appeared and moved the Court to dismiss the cross-bill ''against him and others.'' The Chancellor granted this motion without giving any reason for his action. As the record thus stood, the only parties before the Court were the complainant Barnes and C. H. Fort, individually and as representative of the Association. Thereafter, on May 12, 1941, R. A. Barnes, Administrator of the Estate of J. P. Barnes, the latter having died in the meantime, filed a petition against Fort in which he prayed that ''cross-defendants be notified of the filing of this petition by registered notice.'' It appears from the record that the Clerk and Master mailed such notices to the members named in the petition. In response to this petition several members appeared and pleaded in abatement on the ground that the cross-bill had been dismissed as to them and they were no longer before the Court. The Chancellor sustained these pleas in abatement.

The complainant thereupon suggested the death of C. H. Fort, which was admitted, and on motion *scire facias* issued to Reams D. Farmer to have the cause revived against him as the representative of the Association, process was served upon him, but he failed to answer. Thereupon the Chancellor entered a final decree in the cause, on motion of complainant, the pertinent part of which is as follows: ''It is ordered, etc., that R. A. Barnes,

Administrator of J. T. Barnes, deceased, have and recover of Reams D. Farmer as the representative of the class of members of the Adams Jersey Cattle Association, and of the members of the said Association, as provided by law, the sum of $4,724.00 with interest at six per cent, together with the costs in the main action under the original bill of this cause.''

On July 1, 1943, following the entry of the foregoing decree, the complainant filed his petition against certain individual members of the Association, residents of Robertson County, and also Reams D. Farmer, a resident of Montgomery County. This petition was later amended to show in the caption that it was a ''Petition in the nature of an Original Bill.'' The petition recited the rendition and entry of the above final decree on the note against ''the numerous class of members or membership composing the Adams Jersey Cattle Association, unincorporated,'' which was unappealed from, and that the cause was retained in court for the execution of said decree. The petition alleged that the persons named as defendants were ''members of the said Association at and after the making of the loan, etc., and received benefits therefrom, and that they are jointly and severally liable to the petitioner for the payment of said decree.'' Process was duly served upon the defendants. Some filed pleas in abatement, while others moved to dismiss upon various grounds.

The appellants, John B. Gordon and others, demurred to the petition upon sixteen separate and distinct grounds. We find that some of these are mere repetition of others, while some are argumentative of the merits of the demurrer. The determinative question presented is that the defendants were not parties to the suit at the time the decree was entered for $4,724 against Reams D.

Farmer "as representative of the members of the Association, and no valid judgment could have been rendered; that no valid judgment could have been rendered against the original defendant C. H. Fort as representative of a class, nor against Farmer as his successor; that the record shows that any cause of action which complainant had against defendants accrued more than six years before any suit was brought against them; that the purported judgment insofar as it undertook to bind defendants personally and which may be satisfied out.of their individual assets is violative of Section 8, Article I, of the Constitution of Tennessee, and also violative of their rights under the Fourteenth Amendment to the Constitution of the United States; that complainant and his intestate are guilty of laches; that the original bill failed to aver that the members of the Association were so numerous that it was impracticable to make them parties defendant, and hence the class doctrine has no application." The Chancellor overruled the demurrer and allowed an appeal.

The assignments of error are but a repetition of the foregoing grounds of the demurrer. The legal question thus raised in the demurrer is not new to American jurisprudence. It has been dealt with in a number of jurisdictions as well as by many great writers upon the subject of equity. This Court, in *Powers* v. *Joureymen Bricklayers' Union*, 130 Tenn., 643, 172 S. W., 284, 285, L. R. A. 1915E, 1006, considered the question of the right to maintain a cause of action against an unincorporated association and held that: "As such, of course, it cannot be made a party." It was expressly decided, however, that such an organization could be made a party defendant by making certain of its individual members de-

fendants "as representing all others of the same class." The cause was remanded to allow an amendment to the bill in this regard. In *Brown* v. *Brown*, 86 Tenn., 277, 6 S. W., 869, 7 S. W., 640, the class doctrine was sustained, the Court holding:

" 'Where it is attempted to proceed against two or three individuals as representing a numerous class, it must be alleged in the bill that the suit is brought against them in that character,' otherwise the other members of the class will not be affected by the proceedings."

We must concede without hesitation that, where members of a class are not sued as representatives of all others of the same class, the decree of the Court is binding only as to them.

 Turning to other well recognized authorities, in Volume 4, American Jurisprudence, pp. 487, 488, it is said:

"The doctrine of virtual representation, which recognizes the right of a few persons to sue or defend on behalf of themselves and all others similarly situated, has frequently been applied in the case of actions by or against voluntary unincorporated associations; and it is well settled that where the members of such an association are too numerous to be joined in the action, or where the society is composed of very many members, one or more of the members may sue on behalf of all the interested parties. . . . This doctrine of virtual representation applies also to actions against the several persons who constitute the membership of an association; and an action where the members are numerous may be brought against the members by joining as parties defendant proper representatives of the class without joining the entire membership as defendants."

The foregoing text is fully supported by cases from a number of jurisdictions. See also 15 R. C. L., p. 1026,

which supports the above text found in American Jurisprudence, with the additional statement that "and the judgment against them will have the effect of *res judicata* against all who were thus represented."

Mr. Freeman, in his able work on Judgments, discussing the doctrine of class representation, says, Vol. 1, Fifth Edition, p. 952:

"Sec. 436. Class Representation.—The doctrine of 'class representation' is a well-settled principle of equity jurisprudence which has been embodied in the federal equity rules and quite generally included in code provisions governing parties. In cases properly falling within this principle, wherein members of a class sue or are sued on behalf of other members of a class who have a common or general interest or are too numerous to be made actual parties, the judgment or decree is conclusive for and against those members of the class who are thus represented, in the absence of fraud or collusion."

██ ██ From these authorities we are constrained to hold that the learned Chancellor was correct in overruling the demurrer of the defendant C. H. Fort to the original bill and likewise in overruling the demurrer of the appellants to the "Petition in the nature of an Original Bill." The defendant Fort had been sued in his individual capacity and as representing the members of the Adams Jersey Cattle Association. Not only was the Association properly before the Court, but the numerous members thereof were also before the Court. Contention is made by appellants in their demurrer to the petition that the bill failed to allege that the members of the Association were so numerous that it was impracticable to make them parties defendant and for this reason the decree of the Court was invalid. We think the record discloses the fact that the Association was composed of

numerous members. But aside from this technical objection, the particular question rests within the sound discretion of the trial court. Moreover, the defendant Fort in his answer and cross-bill, and relying on his demurrer, averred that the membership of the Association was numerous, and furthermore that he as President and Reams D. Farmer as Secretary executed the note sued on "for and on behalf of the Association." We therefore hold that this contention is without merit and it is overruled.

Appellants further contend that, since they were not served with process and hence not before the Court until more than six years after the maturity of the note, complainant's right of action is barred by the statute of limitations. This is unsound for the reason that the parties were before the Court by representation, and the statute was tolled as of the date of the filing of the original bill.

██ Finally, it is insisted that the "purported judgment of January 14, 1943, insofar as it undertook to bind defendants personally, etc., is in violation of Section 8, Article I, Constitution of Tennessee, and the Fourteenth Amendment to the Constitution of the United States," in that they have been denied their day in court and are deprived of due process of law. The position thus taken is wholly untenable. The cause of action as shown by the decree is retained in court for the proper execution thereof. No execution could issue against any member of the Association not served with process. Upon a remand of the cause for further proceedings, the appellants may by proper pleadings and proof impeach the original decree for fraud, or any other cause that may be valid and cognizable in a court of equity. They may also interpose as a defense that they were not members

of the Association in such capacity as to render them liable to satisfy the decree. Upon this issue, however, the burden would be upon complainant to show that the appellants were members as aforesaid.

 It is further assigned as error that the Chancellor should have dismissed the bill on the ground of laches. We find from the record that there was long delay in bringing the cause to trial and a final decree. As to who was at fault in this regard, cannot be here determined. Delay, whether it be caused by complainant or defendant, may become the subject of proof. Moreover, laches is not a bar where it is acquiesced in by the party pleading it, or where he himself may be equally at fault. In *Williamson & Co.* v. *Ragsdale*, 170 Tenn., 439, 440, 95 S. W. (2d), 922, 923, it was held: "Only in comparatively rare cases will court of equity sustain defense based on laches." While the question may be raised by demurrer, it rests within the sound judgment and discretion of the Chancellor as to whether or not it is available as a defense. Appellants have urged upon us the fact that due to delay they are now deprived of the right to have judgment over against a member of the Association and that a plea of the statute of limitations against such action would be available to such an adversary. This is an additional argument to the effect that the trial court was in error in not dismissing the bill on the ground of laches. It cannot be considered here under the present demurrer.

 It is further urged upon us that their alleged representative before the court in the original cause had no power to bind them. This also presents a question of fact and cannot be properly raised by demurrer.

We have given careful consideration to the questions made on this appeal and find the assignments of error to

be without merit. The decree of the Chancellor is affirmed and the cause remanded for further proceedings.

### ON PETITION TO REHEAR.

Appellants, alleged to be members of the Adams Jersey Cattle Association, have filed their petition to rehear averring that the opinion of the Court is "revolutionary" in that there is no law tolling the statute of limitations against them since they were not made parties defendant to the original bill. It is earnestly contended that the Court should have held that the statute was tolled on the date process was issued and served upon them under the amended petition of complainant, which was a "Petion in the nature of an Original Bill."

While this question was fully argued by counsel and given consideration by the Court, we are not averse to re-examining it although the petition does not technically comply with Rule 32.

The original bill was filed to recover $2100.00 for money loaned to the Adams Jersey Cattle Association, as evidenced by note duly executed by C. H. Fort as President of the Association. In his answer and cross-bill the defendant Fort averred that "said note was executed only for and on behalf of the Association." The membership being numerous, the Chancellor correctly held that they were before the court by representation, process having been duly served upon the President as representative of the class. Under the authority of *Powers* v. *Journeymen Bricklayers' Union*, 130 Tenn., 643, 172 S. W., 284, L. R. A. 1915E, 1006, as well as other authorities cited in the original opinion, we think the class doctrine was applicable and that the original decree was binding upon all who were represented. See also 1 Daniell's Chancery Pleading and Practice (6 Amer. Ed.), pp. *272-*274.

■■ ■■ Appellants contend that the original decree upon which the present action is based was only binding upon the property of the Association and that the statute of limitations could not be tolled against them where a judgment in *personam* was sought by the complainant; that it would amount to the denial of due process.

We think the authorities fully sustain the Court's opinion that when the original bill was filed against the Association and process served under the class doctrine, the statute was tolled as to the right of action against all members. If the Association is properly before the Court as in *Powers* v. *Journeymen Bricklayers' Union, supra,* its various members are likewise before the Court, since ''they are privy to the proceedings touching the body of which they are members.'' *Patch Manufacturing Co.* v. *Capeless,* 79 Vt., 1, 63 A., 938, 940; *Jardine* v. *Superior Court,* 213 Cal., 301, 2 P. (2d), 756, Annotated 79 A. L. R., 291, 305; *Carpenters' Union* v. *Citizens' Committee,* 333 Ill., 225, 164 N. E., 393, 63 A. L. R., 177, and cases there cited. In *Dewey* v. *St. Albans Trust Co.,* 60 Vt., 1, 12 A., 224, 6 Am. St. Rep., 84, it was held that the decree against the Association was binding upon the rights of the parties represented. While the cases cited in the annotations in 79 A. L. R., 305 relate to service of process under the statute, we think the methods provided in the statutes are cumulative. *Heralds of Liberty* v. *Bowen,* 8 Ga. App., 325, 68 S. E., 1008.

The original bill was ''an action commenced'' within the meaning of those words as used in our Code, section 8571, and the statute was tolled at that time. We see nothing ''strange, novel, or revolutionary'' in this pronouncement. It does not constitute judicial legislation as insisted upon by the petitioners.

The case of *Gold* v. *Bush*, 63 Tenn., 579, cited by counsel is not in point. Appellant Gold was a party to the cause as administrator duly appointed by the Court. A decree rendered more than six years after the original appointment was valid against him and also his bondsmen. In ruling upon the question, the Court said (63 Tenn., at page 582):

"The parties to the bond, executed in open Court in the progress of the suit, are parties to the suit in such a sense as that the Statute of Limitations will not affect their obligation . . ."

In *Tyner* v. *Fenner*, 72 Tenn., 469, also cited by counsel, it was held:

"The statute of limitations does not run in favor of the maker or sureties of a note executed to a Clerk for property sold in the progress of a suit in court, and while the note is in the custody of the law." (Syllabus.)

The original decree of the Chancellor in the instant case held the members of the Association collectively liable upon a contractual obligation. The cause was retained in court for the purpose of enforcing the decree. Later, and more than six years after the maturity of the note sued on, complainant filed his amended bill against the appellants, who were served with process, seeking an enforcement of the decree against them, as well as other members of the Association. This amendment is not the beginning of a new cause of action, since they are in truth and in fact the Association itself. As heretofore stated, "they are privy to the original proceeding touching the body of which they are members." *Patch Manufacturing Co.* v. *Capeless, supra.* "Privies" have been held to include "persons who are partakers or have an interest in any action or thing." Bouvier's Law Dictionary.

It may be stated as a general rule that a limitation upon the right of amendment is that no new cause of action shall be introduced and no new parties brought in after the statute of limitations has become a bar. Here we have neither a new cause of action, nor the addition of new parties.

In Daniell's Chancery Practice, Vol. 1 (6 Amer. Ed.), p. *274, it is said:

"And so bills are frequently entertained by lords of manors against some of the tenants, on a question of common affecting them all; and a person may maintain a bill for tithes against a few of the occupiers within the parish although they set up a *modus* to which the whole are jointly liable."

The learned author cites the following quotation from Lord Eldon:

" 'There is one class of cases very important upon this subject, namely, where a person having at Law a general right to demand service from the individuals of a large district, to his mill for instance, may sue thus in Equity: his demand is upon every individual not to grind corn for their own subsistence, except at his mill; to bring actions against any individual for subtracting that service is regarded as perfectly impracticable; therefore, a bill is filed to establish that right, and it is not necessary to bring all the individuals. Why? Not that it is inexpedient, but that it is impracticable to bring them all. See 48th Equity Rule of the U. S. Supreme Court. The Court, therefore, has required so many that it can be justly said they will fairly and honestly try the legal right between themselves, all other persons interested, and the plaintiff; and when the legal right is so established at Law, the remedy in Equity is very simple: merely a bill stating that the right has been established in such a

proceeding; and upon that ground, a Court of Equity will give the plaintiff relief against the defendants in the second suit, only represented by those in the first. I feel a strong inclination that a decree of the same nature may be made in this case.' "

In *Boyd* v. *United States Mortg. & Trust Co.*, 187 N. Y., 262, 79 N. E., 999, 9 L. R. A. (N. S.), 399, 116 Am. St. Rep., 599, 10 Ann. Cas., 146, it was held, an amendment of a complaint so as to charge defendant individually instead of in a representative capacity did not bring in a new party, so as to permit him to take advantage of the statute of limitations, the period of limitation having run before the amendment was made. See also *Ewing* v. *Wm. L. Foley* (Tex. Civ. App.), 239 S. W., 251; *School Town of Monticello* v. *Grant*, 104 Ind., 168, 1 N. E., 302; *Western Union Tel. Co.* v. *State*, 82 Md., 293, 33 A., 763, 31 L. R. A., 572, 51 Am. St. Rep., 464.

In *Manistee Mill Co. et al.* v. *Hobdy*, 165 Ala., 411, 51 So., 871, 138 Am. St. Rep., 73, the suit was against the Manistee Mill Co., a corporation. After the running of the statute the complaint was amended by substituting the defendant V. J. Herlong, doing business under the name of Manistee Mill Co. The Court, citing *Ex parte Nicrosi*, 103 Ala., 104, 15 So., 507, held the statute of limitations was no defense since it appeared they were one and the same person.

As to the extent the decree may be enforceable against individual members, and especially these petitioners, we are not now called upon to determine. Personal liability must depend upon the facts connecting them with the authorization of the Association's obligation as represented by the note signed by its officers. In 7 C. J. S., Associations, p. 74, sec. 32, subsec. a, it is said:

"While mere membership in an association does not of itself impose liability for the acts of the associates, universal liability of members of a voluntary, unincorporated association may be established by a public act of the association itself, or by the acts of officers, agents, or members where such acts are known to the membership and actively or passively approved."

Upon a remand of this cause the appellants may defend upon the grounds mentioned in the original opinion and upon the further ground that they were not members of the Association when the obligation was incurred, as well as all other defenses available under the plea of *nil debit*. The constitutional rights of petitioners are in no way abridged in this proceeding.

The petition to rehear is accordingly denied.