# McDANIEL v. TEXTILE WORKERS UNION OF AMERICA (CIO) et al.—254 S. W. (2d) 1.

Eastern Section.   August 11, 1952.

Petition for Certiorari denied by Supreme Court, December 6, 1952.

238

McCanless & Taylor and W. J. Barron, both of Morristown, for Victor McDaniel.

Robert S. Cahoon, of Greensboro, N. C., and Crawford & Hurd, of Newport, for Textile Workers Union and others.

McAMIS, J.  The principal questions for our determination are:  (1)  Whether, as applied to a non-resident association, Chapter 32, Public Acts of 1947, providing for process on unincorporated associations, both resident and non-resident, infringes upon the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and (2) whether the Act violates Article 2, Section 17, of the Tennessee Constitution on the ground that it embraces more than one subject and the body of the Act is broader than its caption.

Victor McDaniel sued Ambrose Hash, John Paul Gregory, Textile Workers Union of America (CIO), and its Local No. 1054 in the Circuit Court of Hamblen County, Tennessee, for personal injuries sustained as a result of being shot as he entered the plant of his employer, Enka

Corporation, in Hamblen County, Tennessee at about 6:30 A. M. on June 22, 1950. The declaration charges that the individual defendants in firing upon plaintiff were acting for defendants Textile Workers Union of America (CIO) and Local No. 1054 in maintaining a picket line around the Enka plant during a strike. Process issued and was served upon the individual defendants and upon the Secretary of State of the State of Tennessee to bring the Union and its Local before the Court as authorized by Chapter 32, Acts of 1947, here under assault.

The defendants, Ambrose Hash and John Paul Gregory, each filed a plea of the general issue. The defendants, Textile Workers Union of America (CIO) and Local 1054, each filed a plea in abatement challenging the constitutionality of the 1947 Act on the grounds indicated. The plea in abatement was sustained as to Textile Workers Union of America, a non-resident association, apparently on the theory that non-resident individuals composing an unincorporated association have an unrestricted right, under the Fourteenth Amendment's guaranty of equal rights, to engage in lawful acts within the state and that the Act in attempting to make them amenable to process within the State lays an illegal restriction upon the right of such individuals to engage in business, on an equal footing, with citizens of Tennessee.

The Act was found not violative of Article 2, Section 17, of the Constitution of Tennessee and a trial on the merits before the court and a jury, resulted in a verdict and judgment against the remaining defendants for $10,-000 actual damages and a like amount as punitive damages. All parties except Textile Workers of America (CIO) have appealed, the plaintiff from the holding that the plea in abatement should be sustained as to Textile

Workers of America (CIO) and the individual defendants and Local 1054 from the overruling of various grounds of their motions for a new trial. We consider first plaintiff's appeal from the action of the Court in sustaining the plea in abatement of Textile Workers Union of America (CIO), on the ground the Act contravenes the Fourteenth Amendment.

The Act reads:

"An Act providing for and regulating the doing of business in the State of Tennessee by unincorporated associations or organizations and providing for the service of legal process thereon.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That any unincorporated association or organizaton, whether resident, or nonresident, now doing or hereafter desiring to do business in this State by performing any of the acts for which it was formed, shall, before any such acts are performed, appoint an agent in this State upon whom all process may be served, and certify to the Clerk of the Circuit Court of each county in which said association or organization desires to perform any of the acts for which it was organized the name and address of such process agent. If said unincorporated association or organization shall fail to appoint the process agent pursuant to this Act, all process may be served upon the Secretary of the State of Tennessee. Upon such service, the Secretary of State shall forward a copy of the process to the last known address of such unincorporated association or organization. Service upon the process agent appointed pursuant to this Act or upon the Secretary of State, if no process agent is appointed, shall be

legal and binding on said association or organization, and any judgment recovered in any action commenced by service of process, as provided in this Act, shall be valid and may be collected out of any real or personal property belonging to the association or organization.

"Sec. 2. Be it further enacted, That this Act take effect from and after its passage, the public welfare requiring it."

■ Since the purpose of the Act, as indicated by the title, is to regulate the business of unincorporated associations within the State, the provisions for service of process are to be construed as applying only to actions growing out of the conduct of such business within the State. We have such a case here:

Local 1054 was organized prior to June 22, 1950, in Hamblen County, Tennessee, where it maintained an active organization staffed with officers including a president, a vice-president and a business agent. The parent organization conducted its activities through the local and sent representatives to Hamblen County to engage in activities growing out of the strike and designed to bring it to a successful conclusion. There is evidence from which a jury could find that both acted to establish or maintain a picket line at the plant entrance and, by threats of violence, pursuade non members not to enter the plant as employees of Enka. The record is such that a jury could reasonably find that members and sympathizers in the picket line were directed to "thin out" employees when they attempted to enter or leave the plant.

On the morning of June 22, 1950, the picket was ranged along the highway in front of the plant entrance behind

a line of four automobiles and between the automobiles and a drainage ditch. When plaintiff McDaniel and a companion, on approaching the plant entrance in an automobile, saw that the entrance was blocked they attempted to drive across a field toward the plant buildings. A number of shots thereupon came from the picket line. Some of them struck the car. Plaintiff then stopped the car and he and his companion started running toward the plant. More shots came from the picket line and plaintiff fell with a shot in his back. There is material evidence that the shots came from behind the cars over a space 20 feet in length; that members of the union were in the picket prior to the shooting and had not had an opportunity to leave prior to the shooting without being observed; that both Hash and Gregory were members of the Union and that both fired at plaintiff; that at least 47 shots were fired.

Taking the findings of the jury on material, credible evidence as we are required to do it is apparent that the acts giving rise to the present action bear an intimate relation to the activities of the unincorporated defendant organizations within the State. The question is: As applied to such a non-resident organization, are the attempts of a state to save its citizens and residents the inconvenience of going to a foreign jurisdiction to obtain redress for wrongs committed within the State and growing out of a business conducted within the State invalid as a denial of due process or the equal protection accorded citizens of the United States under the Fourteenth Amendment?

Cases involving foreign corporations are not in point because they occupy a different status from that of non-resident individuals, Knox Bros. v. Wagner & Co., 141 Tenn. 348, 355, 209 S.W. 638, and numerous recent cases

involving non-resident motorists are no more than persuasive since the practice of subjecting them to process is predicated upon consent implied from the use of local highways. Cases involving the power of domestic courts over non-resident individuals, under state statutes similar to the Act here under consideration, are not entirely in harmony. As will be seen the modern view is in favor of the right if the cause of action grows out of business transacted within the state.

In Knox Bros. v. Wagner & Co., supra, a partnership composed of non-residents of Tennessee carried on a business in Davidson County, Tennessee, where suit was instituted and process served on the local manager of the business in Davidson County. An attempt was made to justify the bringing of suit and the service of process in Davidson County under what is now Section 8669 of Williams' Tennessee Code, providing for service of process on an agent of an individual in counties other than his principal place of residence for actions growing out of business conducted within the County where suit is instituted. The attack there, as in this case, was based upon the theory of a violation of the 14th Amendment. The court followed Flexner v. Farson, 268 Ill. 435, 109 N.E. 327, Ann. Cas.1916D, 810, affirmed January 7, 1919 by the Supreme Court of the United States in 248 U.S. 289, 39 Sup. Ct. 97, 63 L. Ed. 250, and held unconstitutional the Tennessee statute there involved.

The opinion in the Knox Brothers case referred to the opinion of Mr. Justice Holmes in the Flexner case affirming the Illinois holding in that case that service of process could not be had in Kentucky on a local agent of an Illinois partnership under a Kentucky statute and cited, as further supporting the conclusion reached, the Federal case of Moredock v. Kirby, C. C., 118 F. 180.

It becomes necessary, therefore, to trace subsequent Federal holdings to determine whether the same rule still obtains in the Federal courts since the question involves a construction and application of the Federal Constitution as to which Federal holdings should be given precedence over state holdings. It should be noted too in determining the weight to be given the Knox Brothers case that the statute under consideration in that case failed to evince a legislative intent to establish as state policy the principle of substituted process upon non-resident individuals doing business within the state, clearly indicated in the 1947 Act. It seems to be everywhere agreed that substituted or constructive service of process is wholly invalid in an action in personam in the absence of statute. See 42 Am. Jur. p. 53, Process, Sec. 64.

In Dickson v. Simpson, 172 Tenn. 680, 113 S. W. 2d 1190, 116 A. L. R. 380, a statute was involved which sought to confer jurisdiction in garnishment proceedings upon the Courts of Tennessee when neither the defendant debtor nor any of his property was within the State but, as pointed out in the opinion, the statute made no provision for personal notice to the defendant. That case is not considered in point because here reliance is upon the doing of business within the State with ample provision for actual notice of suit.

Looking to Federal cases, in Henry L. Doherty & Co. v. Goodman, 294 U. S. 623, 55 S. Ct. 553, 79 L. Ed. 1097, the Supreme Court affirmed the holding of the Supreme Court of Iowa in Goodman v. Henry L. Doherty & Co., 218 Iowa 529, 255 N. W. 667, sustaining the Iowa court's jurisdiction over the non-resident members of a partnership in a cause of action arising out of partnership business done within the state, thus, apparently, recognizing jurisdiction which it had seemingly refused to

recognize in the Flexner case under a similar statute. Perhaps, the intention was to limit the Flexner case to its own facts, one of which was that the person upon whom service of process was had was no longer an agent of the partnership as pointed out by Professor Overton in an excellent article entitled "Broadening in Personam Jurisdiction," Tenn. Law Rev., February 1952, Vol. 22, No. 2, where he says, in reference to Knox Bros. v. Wagner, supra, 141 Tenn. 348, 355, 209 S. W. 638, and the rule of Flexner v. Farson:

"In the case of Flexner v. Farson, the Kentucky statute authorized service upon the agent of nonresident partners for causes of action arising out of the business conducted in Kentucky. The Court held that jurisdiction did not exist. The case was always explainable on the ground, upon which it was later emasculated, that the agent had ceased to be an agent prior to the service. However, the case was clearly understood, and indications were numerous that the Court felt that the privileges and immunities clause forbade the rule as respects natural persons. The Supreme Court of Tennessee so construed the case. In Knox v. E. W. Wagner & Co., and Frolich v. Hanson, 155 Tenn. 601, 296 S. W. 353, the court struck down a Tennessee statute in so far as it would have authorized service upon the local agent of a non-resident. Inasmuch as these cases were grounded on the due process clause and upon Flexner v. Farson, they would seem to fall along with it, for Flexner v. Farson has lost all of its authority.

"This is the consequence of Doherty & Co. v. Goodman. This case went a long way to establishing that the doing of an act is in this country, as in many

foreign systems, a basis of personal power. That case involved an action for damages arising out of a sale of stock. Under statute a local agent was served, although the defendant was an absent non-resident. The Supreme Court sustained the exercise of the power. The basis was stated to be that Iowa treats the business of selling stocks and bonds as exceptional and subjects it to regulation. Since it is not true that selling stocks and bonds is any more dangerous in fact than many other types of business transactions, it would seem that we have really recognized the doing of an act as an out and out basis of personal jurisdiction. The cautious statements made by authorities that 'certain sorts of dangerous acts' are a basis of power, is, it is believed, simply an illustration of a hesitancy to go beyond what is absolutely required by a case.''

In the still later case of International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 158, 90 L. Ed. 95, 161 A. L. R. 1057, 1061, though involving a non-resident corporation as distinguished from a non-resident individual, the following significant language was used by Chief Justice Stone:

''Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennover v. Neff, 95 U. S. 714, 733, 24 L. Ed. 565 [572]. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not

present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' ''

That these ''contacts'' are of importance in deciding the question of jurisdiction was indicated further on in the opinion where it was said:

''Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant *with which the state has no contacts, ties, or relations.''* (Italics ours.)

In Sugg v. Hendrix, 142 F. 2d 740, 741, 743, the Circuit Court of Appeals, 5th Circuit, after considering the effect of Flexner v. Farson, supra, upheld a Mississippi statute similar to the Act here involved against the attack that it denied a non-resident defendant due process of law and the equal protection of the law vouchsafed by the 14th Amendment, saying: ''The statute in question takes due precaution to insure the defendant of the receipt of the notice and of a reasonable opportunity to appear and to defend the case. Since the Act does this, and since it makes the non-resident who does business in the state * * * subject to process only in actions for damages arising out of such business in the same manner as a resident, we are of the view that it does not deny the Defendant the equal protection of the law, due process of the law, nor deny to him any privileges and immunities that are afforded to a resident of the state * * * The thought is not shocking

248

that one who comes into a state for the purpose of conducting his business in that state should be made amenable to the courts and laws of the state and answerable to its citizens for damages sustained by them which were the result of the business transacted in the state.''

Decisions of state courts of last resort sustaining as constitutional similar legislation include Davidson v. Henry L. Doherty & Co., 214 Iowa 739, 241 N. W. 700, 91 A. L. R. 1308; Gillioz v. Kincannon, 213 Ark. 1010, 214 S. W. 2d 212. Other cases generally in point are collected at 91 A. L. R. beginning at page 1327. See also 1 Ark. Law Rev., No. 4, page 201 (Dr. Leflar); 32 Harvard Law Rev. 871 et seq.; 19 Iowa Law Rev. 421; also 72 C. J. S., Process, Sec. 50, pp. 1061, 1062, and 42 Am. Jur. 66, 67, Process, Sec. 78, where it is said the trend of modern decisions is to sustain the power of a state to provide for bringing in a non-resident individual who is doing business in the state of the forum by something other than personal service of process upon him within the state.

It seems to us a non-resident who comes into a state and claims its protection in doing business therein and commits a wrong, whether by breach of contract or tort, and then invokes the 14th Amendment to evade process within the state is claiming greater ''protection'' than that accorded citizens of the state for it is held that they are subject to substituted or constructive service of process to the extent authorized by statute. Frolich & Barbour, v. Hanson, 155 Tenn. 601, 296 S. W. 353, and authorities cited. We think a state has a right in the exercise of the police power to protect its citizens against the inconveniences, often amounting to complete denial of redress, of going to a foreign state to sue for a wrong committed by one doing business within the

state and arising out of business done within the state. We, therefore, disagree with this holding of the learned Circuit Judge and hold the Act not violative of the 14th Amendment.

■ We are of opinion the Circuit Court was correct in holding that the 1947 Act does not violate Article 2, Section 17, of the Constitution of Tennessee providing that an Act must not include more than one subject, that subject to be embraced in the title.

The basis of this attack is the inclusion of a provision in the body of the Act making valid any judgment rendered in any action "commenced by service of process, as provided in this Act", the contention being that the caption is not broad enough to cover this provision and that it constitutes another "subject" within the meaning of the constitutional provision invoked. We think the validation of judgments rendered on process served within the provisions of the Act is germane to the general subject upon which the Legislature was acting. Regulation of a business and service of process upon those engaged in it suggest that the Act deals with judgments in Court proceedings.

■ The title of an act may be either narrow and restricted or broad and general as the Legislature may determine. In either case if the legislation under it is germane to the general subject it is not invalid under this section. Crawford v. Nashville, C. etc. R. Co., 153 Tenn. 642, 284 S. W. 892; Harris v. Rush, 157 Tenn. 295, 8 S. W. 2d 366.

■ If the caption is general it justifies provisions in the body of the act not incongruous with its provisions as to the manner, means and instrumentality whereby it may be enforced or its purpose accomplished. Armstrong v. City of South Fulton, 169 Tenn. 54, 82 S. W.

(2d) 862; Hicks v. Rhea County, 189 Tenn. 383, 225 S. W. (2d) 544.

The regulation of the business of unincorporated associations is a broad title. Cf. Haynes v. Sanford, 185 Tenn. 576, 206 S. W. (2d) 796. The provision of the Act in question is germane to the general purpose of the Act, under the rule of liberal construction to which the Courts are committed. See Bird v. State, 131 Tenn. 518, 175 S. W. 554; Kizer v. State, 140 Tenn. 582, 205 S. W. 423.

■ We think the plaintiff made out a case on direct and circumstantial evidence entitling him to go to the jury as to Ambrose Hash, John Paul Gregory and Local 1054. Officers of Local 1054 were seen frequently in the picket line from which came threats of death and violence. C. E. Kinser testified that on June 22, 1950, he was manager of the Plant Protection and Safety at Enka plant; that the president and vice-president of. Local 1054 were in the crowd at the entrance to the plant and about midnight before the shooting two men came from the crowd and talked over the telephone to the business representative of Local 1054 who made the following statement:

"You know what our plans are, and you are to carry them out. Keep 'em in until they come out, and when they come out the gate thin 'em out."

■ There is direct testimony that defendant Gregory fired at plaintiff and defendant Hash submitted to a criminal charge of felonious assault based upon the shooting of plaintiff on the occasion in question. We see no reason why such evidence would not be competent as an admission against interest. Though the contrary insistence is made by learned counsel for Ambrose, no authority is cited to sustain it.

It is also insisted that, under the authority of Powers v. Journeymen Bricklayers' Union, 130 Tenn. 643, 172 S. W. 284, L. R. A. 1915E, 1006, and Barnes v. Fort, 181 Tenn. 522, 181 S. W. (2d) 881, an unincorporated association such as a labor union is not a legal entity and may not as such be made a party defendant to a suit. We think counsel misapply the holdings in these cases. In any event, as we have seen, the statute now expressly authorizes suits against such associations and provides for service of process and judgment.

■ We cannot say the verdict is excessive either as to actual or punitive damages. Plaintiff was severely injured and placed in mortal danger of losing his life by the numerous shots fired at him while he was completely defenseless.

Other questions made by the assignments have been considered and found without merit.

As to the defendants Local 1054, Ambrose Hash and John Paul Gregory the judgment will be affirmed and the cause remanded for trial as to the defendant Textile Workers Union of America (CIO). Costs below will remain as taxed. Costs of appeal will be taxed to defendants.

Hale and Howard, JJ., concur.