J. CLIFTON COTTON, Plaintiff-in-Error,

*v.*

THOMAS R. UNDERWOOD, Morris Best, Leroy Pippinger
and American Insurance Association, Defendants-in-
Error.

442 S.W.2d 632.

(*Knoxville*, September Term, 1968.)

Opinion filed June 13, 1969.

ERNEST W. COTTEN, Lebanon, and JOHN S. WRINKLE, Chattanooga, for plaintiff in error.

BISHOP, THOMAS, LEITNER, MANN & MILBURN, and COLLINS & SEAL, Chattanooga, R. VANN OWENS, Chattanooga, of counsel, for defendants in error.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Plaintiff J. Clifton Cotton sued Thomas R. Underwood, Morris Best, Leroy Pippinger and American Insurance Association for $500,000.00 damages for malicious prosecution. Cotton alleged defendants prosecuted him for the arsonous burning of his house but that the jury had returned a verdict of not guilty.

Defendants pleaded in abatement that in J. Clifton Cotton's Federal Court suit against Jersey Insurance Company to recover on an insurance policy where the

primary issue was whether Mr. Cotton had intentionally burned his house, this issue had been found against Cotton and a judgment entered holding that Cotton had intentionally burned his insured house and so could not recover on the policy; and in addition was liable to pay a bad faith penalty for suing without any cause or right, which was fixed at $2,000.00.

The plea in abatement accepted an allegation in Cotton's declaration that American Insurance Association was an organization of insurance companies and that Jersey Insurance Company of New York was a member of the American Insurance Association. The plea also accepted as true the allegation in the declaration that Morris Best was an agent of American Insurance Association and was acting within the scope of his agency in his actions. The plea also accepted as true the allegation that the American Insurance Association was sponsoring all of the acts of the other codefendants, Leroy Pippinger and Thomas R. Underwood. The plea contended on this basis that there was such privity between the defendants and Jersey that the verdict and judgment rendered in J. Clifton Cotton's suit against Jersey Insurance Company of New York, Civil Action No. 4343 in the United States District Court at Chattanooga was res judicata: that the verdict and judgment rendered in Cotton's suit in the Federal District Court was controlling in that the same subject matter and issues asserted in the malicious prosecution suit were asserted there, and had been determined adversely to Cotton. That this judicial determination conclusively settled that Cotton had in fact intentionally burned his house so that he was barred by the doctrines of collateral estoppel and estoppel by judgment from litigating his malicious prosecution suit.

After the judgment in the federal action had been affirmed by the Sixth Circuit Court of Appeals, the malicious prosecution case was heard on the plea, a joinder of issue, and a stipulation that the American Insurance Association is the successor organization to the National Board of Fire Underwriters, which ceased to exist on January 1, 1965, at which time the American Insurance Association came into existence. That on March 20, 1964, the date on which a fire partially destroyed plaintiff's dwelling house, the Jersey Insurance Company of New York was a member of the National Board of Fire Underwriters, and continued to be a member thereof until its resignation therefrom about March 5, 1965. That on or about June 23, 1964, when the declaration alleged defendants procured a felony warrant against the plaintiff, the Jersey Insurance Company was a member of the National Board of Fire Underwriters. That at all times material and specifically including the period from March 20, 1964 until the present time, defendant Morris Best, was an employee of the National Board of Fire Underwriters or its successor, American Insurance Association and was acting within the scope of his employment in the investigation and handling of the prosecution.

The trial judge sustained the plea in abatement and dismissed Cotton's suit. Cotton has appealed and assigned this action as error.

In this Court plaintiff-in-error Cotton relies on the general discussion of res judicata to be found in Corpus Juris and Corpus Juris Secundum, and quotes from *Hull v. Vaughn, et al,* 23 Tenn.App. 448, 134 S.W.2d 206, a general statement with respect to the nature and purpose of the doctrine.

■ Citing Caruthers' History of a Lawsuit, 8th Ed., sec. 144, p. 167 and the case of *F. W. Woolworth Co. v. Connors*, 142 Tenn. 678, 222 S.W. 1053, for the proposition that there can be no recovery in a malicious prosecution suit where the defendants had good and reasonable grounds to believe the party prosecuted was guilty, with which we agree, defendants-in-error contend there was such privity between themselves and the insurance company as satisfies the privity requirement. And, in the event it should be thought that in strictissimi juris this claimed privity relationship is subject to criticism, that the principle first laid down in *Ragan v. Kennedy*, 1 Tenn. 91, and reasserted in *Cantrell v. Burnett & Henderson Co.*, 187 Tenn. 522, 216 S.W.2d 307, that the privity requirement is satisfied if the party against whom the former judgment is intended to be introduced was the primary party to the former suit and the judgment therein was directly upon the same issue.

Examining first the privity contention: the Jersey Insurance Company, was a member of the National Board of Fire Underwriters at the time the criminal warrant was issued against plaintiff-in-error and Best was the special agent of that Board. The Underwriters Association became the American Insurance Association and Best continues as its agent. The only interest Best and American had in prosecuting Cotton grew out of this relationship with Jersey, so the implication of this relationship is that Best and American were acting for Jersey under contractual relationships and associational relationships which would make them to a degree at least privy with each other. *Barnes v. Fort*, 181 Tenn. 522, 181 S.W.2d 881, 887; *Loveman Co. v. Bayless*, 128 Tenn. 307, 160 S.W. 841; *Tennessee Eastman Co. v. Adams*, 214 Tenn. 451, 381 S.W.2d 269.

 Defendants-in-error, Pippinger, as state fire marshal, and Thomas R. Underwood as an official of the Fire Department of the City of Chattanooga, were acting in their official capacity on behalf of Underwriters and through it on behalf of Jersey. In *Farnsworth v. Arnold*, 35 Tenn. 252, it was held that a sheriff who acted on behalf of a party was in such privity with the party as would make a judgment against the sheriff binding on the party for whom he acted. Bearing in mind that privies are not only those who are so related by blood and law, but are those who are so related by reason of the facts showing an identity of interest,[1] we think that for the purpose of estoppel in this case there was such an identity of interest and such legal and contractual relationships between the defendants-in-error and Jersey as would make the federal court judgment in Jersey's favor against Cotton available to defendants as an estoppel by judgment.

*Cantrell v. Burnett & Henderson Co.*, supra, supports defendants-in-error's second contention. The question in that case was whether a decision against Cantrell and in favor of Burnett & Henderson Co., that an automobile the company had recently sold Cantrell had not burned because of defective wiring, barred Cantrell's subsequent suit against the Hudson Sales Corporation on this same

---

[1] "Privies. Persons who are partakers or have an interest in any action or thing, or any relation to another. Wood, Inst. b. 2, c. 3, p. 255; Co.Litt. 271a. There are several kinds of privies: namely, privies in blood, as the heir is to the ancestor; privies in representation, as is the executor or administrator to the deceased; privies in estate, as the relation between the donor and donee, lessor and lessee; privies in respect to contracts; and privies on account of estate and contract together. Prest.Conv. 327. Privies have also been divided into privies in fact and privies in law. 8 Co.42b. See Viner, Abr. Privity; 5 Com.Dig. 347; Hamm. Part. 131; Woodf. Landl. & T. 279; 1 Dane, Abr. c. 1, art. 6. The latter are created by the law casting land upon a person, as in escheat; 1 Greenl.Ev. sec. 189." Vol. 3 Bouv.Law Dict.. Rawle's Third Revision, p. 2714.

issue. Although there was no contention the Sales Corporation and Burnett & Henderson Company were privies, it was held the judgment against Cantrell upon the identical fact issue was available to Hudson Sales Corporation as an estoppel against Cantrell's suit against it. In the course of discussing this it was said:

"(1) As early as the case of *Ragan v. Kennedy,* 1 Tenn. 91, 94, this Court in a *per curiam* opinion stated the rule in the situation we have here to be this:

'In order to render a verdict in one action evidence in another, it is not necessary that the parties should be the same. It is sufficient if the party *against whom the verdict is intended to be introduced* was a party to the former suit, and that the same subject matter was directly put in issue by the pleadings.' (Emphasis added.)

"That rule is stated as the law today by the text writer in 30 American Jurisprudence, page 920-921 in this language:

'It is a fundamental principle of jurisprudence that material facts or questions, which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions becomes *res judicata* and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action whether the subsequent action involves the same or a different form or proceedings, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different

grounds, or tried on different theories, or instituted for different purposes, and seek different relief,' citing cases.

"It will be noted that in the quotation just made there is contained the expression 'in a subsequent action between the same parties *or their privies.'* (Emphasis added.) In discussing the meaning of the word 'privy' in connection with the doctrine of *res judicata* on facts previously determined judicially, it is stated in 30 American Jurisprudence, page 957-958 that:

'It has been declared that privity within the meaning of the doctrine of *res judicata* is privity as it exists in relation to the subject matter of the litigation.'

"In our case of *Loveman Co. v. Bayless,* 128 Tenn. 307, 316, 160 S.W. 841, 843, Ann.Cas.1915C, 187, in considering the same question, this Court said:

'That every one is entitled to his day in court, and no more, on the same cause of action; that he has enjoyed this right when he has contested the matter with persons committing the wrong and primarily liable, and has been cast in such suit; that to permit him after this to contest the matter with one only secondarily liable would be to give him two suits upon the same cause of action. It is said to be a branch of law of *res adjudicata,* but not requiring that the parties should be the same, or those strictly in privity.' (Emphasis added.)" *Cantrell v. Burnett & Henderson Co.,* 187 Tenn. 556-558, 216 S.W.2d 307.

Defendants-in-error call our attention to *Coca Cola v. Pepsi Cola Co.,* 36 Del. 124, 172 A. 260, where a discussion is found that is of value in judging this case. In that case Pepsi offered $10,000.00 reward for informa-

tion leading to the detection of any cold drink dealer substituting any five cent drink for Pepsi. Coca Cola sued Pepsi for the $10,000.00 reward and named three dealers who had allegedly substituted Coca Cola for Pepsi. Pepsi pleaded a judgment in a former suit where Coca Cola had sued two of the three dealers alleging the same fact and the suit had been decided adversely to Coca Cola prior to its suit against Pepsi. Coca Cola maintained Pepsi was not a party or privy to the earlier litigation so the judgment did not inure to its benefit; The Delaware Court in considering whether Pepsi could rely upon this former judgment said:

"In determining the question as to whether a person not a party to a prior proceeding may take advantage of the disposition of such case in a subsequent action by a plea of res judicata directed against an adversary who had been a party to a first proceeding, we have attempted to discover the reason for the rule 'that estoppels must be mutual or that both litigants must be alike concluded by a judgment or it binds neither'.

"Where a general rule is suggested as having application to a number of classes of cases, the true reason for the rule must bear investigation so as to show its application to each individual class.

"We have, of course, found the exception to the rule relied upon by the defendant 'that where the liability of the defendant is altogether dependent upon the culpability of one exonerated in a prior suit upon the same facts when sued by the same plaintiff' the mutuality of the estoppel is not required. This, however, furnishes a mere exception to the rule and, so far as we have found, is evidenced only by cases where some privity or relationship existed between the defendants

in the two actions. We are interested in a case where no privity is shown to exist and our duty is to determine the necessity of such privity. In 24 A. and E. Encl. (2d Ed.) 731, is given the only concrete basis for the rule that we have found. There it is said

" 'The rule that a judgment or decree concludes only parties or privies is based on that fundamental principle that no man can be deprived of his property except by due process of law, the principle which in the United States has been embodied in the Federal Constitution and in the Constitution of the several States.'

"In a great majority of cases this given reason may be satisfactory, but it is immediately apparent that it cannot always be so for it is obvious that it can have application only when the doctrine is invoked against one who had not been a party to the former proceedings, for he has not been deprived of any due process in the presentation of his rights or claims.

"The doctrine of res judicata is primarily one of public policy and only secondarily of private benefit to individual litigants. It draws its strength not so much from the private advantage of the party seeking to invoke it, but its roots lie in the principle that public policy and welfare require a definite end to litigation when each of the parties has had a full, free and untrammelled opportunity of presenting all of the facts pertinent to the controversy. * * *

* * * * * *

"The present defendant pleading res judicata was not a party to the former proceeding and the judgment in the former proceeding did not bind it so there is no mutuality. The present plaintiff, against whom the res judicata is pleaded is alleged to have been the

unsuccessful plaintiff in the former proceedings where the issues were alleged to have been identical with those here involved. We are not now passing upon the actual existence, as a fact, of the identity of the issues in the two proceedings, for that identity must be proven. But assuming the identity of the issues, we are of the opinion that a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by such adverse judgment in a second suit involving all the identical issues already decided. The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one.''

The rationale in holding of the *Pepsi Cola* case was followed in *Gammell v. Ernst & Ernst,* 245 Minn. 249, 72 N.W.2d 364, 54 A.L.R.2d 316.

While it is not necessary in the case under consideration to go as far as the Delaware Court did in *Pepsi,* because there is a character of relationship which supports the conclusion there was in fact such an identity of interests as to make the parties privies in fact and law, the public policy predicate of *Pepsi* is particularly appealing and very strong ground for making that rule applicable in this case. After all, this is a case in which probable cause on the part of defendants-in-error to prosecute Cotton is a complete defense, and under the fact finding and judgment of the Federal Court Cotton unquestionably committed the crime of arson. So to allow him to continue with this suit in the face of that

fact finding and final judgment would be so utterly repugnant to every notion of justice, as to make it imperative that his suit be rejected on any available ground.

The assignments of error are overruled and the judgment of the trial court sustaining the plea in abatement and dismissing plaintiff-in-error's suit is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.