**JERSEY FARMS MILK SERVICE, INC.**

**v.**

**AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, et al.**

**Civ. No. 4877.**

United States District Court
M. D. Tennessee,
Nashville Division.

Jan. 16, 1969.

Olin White, Manier, Crouch, White &
Herod, Nashville, Tenn., for plaintiff.

Cecil D. Branstetter, Branstetter, Moody & Kilgore, Nashville, Tenn., Lester Asher, Chicago, Ill., Lee D. Sinclair, Washington, D. C., John J. Hooker, Hooker, Keeble, Dodson & Harris, and George Barrett, Snodgrass, Boyce, Barrett & Stokes, Nashville, Tenn., for defendants.

## MEMORANDUM AND ORDER

### FRANK GRAY, Jr., District Judge.

This is an action for damages growing out of an alleged breach of a collective bargaining agreement. The plaintiff, Jersey Farms Milk Service, Inc. (hereafter "Jersey Farms") commenced the suit in the Chancery Court of Davidson County, Tennessee, and it was subsequently removed to this court. Named as defendants are the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO (hereafter the "International"), its Nashville affiliate, Local No. 405 (hereafter "Local 405"), R. G. Sloan and Billy Thornton, officers of Local 405, the National Farmers Organization (hereafter "NFO"), and Herschel Ligon and David Hugh Thompson, local representatives of the NFO.

The complaint alleges that Local 405, its officers Sloan and Thornton, and the International breached the no-strike provisions of the collective bargaining agreement when, on March 24, 1967, the union members at Jersey Farms' Nashville plant refused to cross picket lines established there by NFO, causing a five-day work stoppage at the plant. Further, it alleges that defendants Ligon, Thompson, and the NFO procured and induced the aforesaid breach of the collective bargaining agreement. Damages are sought in the sum of $2,000,000.

There have been numerous motions filed in this action. By order heretofore entered, this court has denied a motion by plaintiff to remand the case to the State court. Certain of the defendants filed motions to dismiss, all of which were ruled on in an order entered October 3, 1968. In that order, the court denied the motions of the International and Local 405, and granted the motion of defendants Sloan and Thornton. In addition, plaintiff was given leave either to amend the process served from the State court or issue new process in accordance with the requirements of the Federal Rules of Civil Procedure.

Pursuant to that order plaintiff has had new process served on all the defendants through the office of the Clerk of this court. Defendants Local 405 and the International have filed motions to quash the new service of process and dismiss the action, and defendants Sloan and Thornton have renewed their motion to dismiss the action. These three motions are now before the court for determination, and they are discussed hereinafter under separate headings.

1. *Motion to Dismiss by Defendants Sloan and Thornton.*—In serving new process on the defendants pursuant to the court's order of October 3, 1968, plaintiff once again had process served upon defendants Sloan and Thornton, naming them as defendants only in their capacity as representatives of the Union. By their motion, Sloan and Thornton contend that the order of October 3, 1968, dismissed the action as to them in any capacity, and that the order did not grant plaintiff leave to cause new process to issue against them.

In the aforementioned order the court held that, under section 301(b) of the Labor-Management Relations Act, 29 U.S.C. § 185(b), as interpreted by the Supreme Court in Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), an employer's complaint which seeks damages against individual employees for violation of a collective bargaining agreement does not state a claim for which relief can be granted. Accordingly, the court ruled that, " * * * the motion to dismiss defendants Sloan and Thornton as individuals is GRANTED."

Apparently, plaintiff has interpreted the above-quoted portion of the

order as holding that the complaint states a cause of action against Sloan and Thornton in their representative capacity. This is not the conclusion which the court was attempting to convey. Under section 301(b) and the *Atkinson* holding, Sloan and Thornton, as employees and Union members, are not liable for breach of the collective bargaining agreement. If a breach is established, only the Union as an entity is liable for the damages which result to the employer. While the acts of Sloan and Thornton may be important in proving that the agreement was breached, and while service of process upon them in their capacities as agents and officers of Local 405 would seem to be proper in order to accomplish service upon the Local, these two defendants are not liable in damages to Jersey Farms in any capacity under this complaint. Therefore, the action against defendants Sloan and Thornton is dismissed.

2. *Motion to Quash Service of Process and Dismiss by Local 405.*—The return on the new process issued by plaintiff pursuant to the order of October 3, 1968, indicates that Local 405 was served by the deposit of a copy of the summons with R. G. Sloan, the Secretary-Treasurer of Local 405. Local 405 contends that it is not subject to service of process in this action except under the provisions of T.C.A. § 20–223 which provides for service of process upon unincorporated as-sociations.[1] Since plaintiff has not followed the procedures set forth in that statute, Local 405 contends that the service of process against it must be quashed.

In the order of October 3, 1968, the court allowed the plaintiff the opportunity to perfect process by issuing new process under the Federal Rules of Civil Procedure. Rule 4(d) (3) provides that service of summons upon an unincorporated association shall be made, " * * * by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * " Since service has been had upon an officer of Local 405, it would appear that the requirements of the rule have been met and that process has properly been served.

 However, the Local contends that Rule 4(d) describes only the "manner" in which service of process must be made and that the capacity of the Local as an unincorporated association to be sued is governed by state law, specifically, T.C.A. § 20–223. In support of this contention the Local relies on Rule 17(b), Federal Rules of Civil Procedure, which provides that the capacity of an unincorporated association shall be determined by the law of the state in which the district court sits. The rule contains an important exception, how-

---

1. T.C.A. § 20–223 provides:

"*Actions against unincorporated associations and nonresident partnerships.*— Any unincorporated association or organization, whether resident or nonresident, including nonresident partnerships and nonresident trusts, doing or desiring to do business in this state by performing any of the acts for which it was formed, shall, before any such acts are performed, appoint an agent in this state upon whom all process may be served, and certify to the clerk of the circuit court of each county in which said association or organization desires to perform any of the acts for which it was organized the name and address of such process agent. If said unincorporated association or organization shall fail to appoint the process agent pursuant to this section, all process may be served upon the secretary of the state of Tennessee. Upon such service, the secretary of state by registered return-receipt mail shall forward a copy of the process to the last known address of such unincorporated association or organization. Service upon the process agent appointed pursuant to this section or upon the secretary of state, if no process agent is appointed, shall be legal and binding on said association or organization, and any judgment recovered in any action commenced by service of process, as provided in this section, shall be valid and may be collected out of any real or personal property belonging to the association or organization."

ever, which states that an unincorporated association " * * * may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States * * *." Since federal law governs the rights of parties to a collective bargaining agreement, Textile Workers Union v. Lincoln Mills of Ala., 353 U.S. 448, 77 S. Ct. 912, 1 L.Ed.2d 972 (1957), the present action comes within the aforesaid exception, and Local 405 has the capacity to be sued irrespective of state law. 3A Moore, Federal Practice ¶ 17.25, at 856–57. Accordingly, the motion by the Local to quash the service of process and dismiss the action is denied.

3. *Motion to Quash Service of Process and Dismiss by the International.*— In addition to the provisions of Rule 4 (d) (3), discussed *supra,* the Federal Rules of Civil Procedure contain an alternative means of serving process upon an unincorporated association. Rule 4 (d) (7) provides that service of process may be had upon any defendant of the type enumerated in Rule 4(d) (3) in the manner prescribed by the law of the state in which the district court is held. In serving new process upon the International pursuant to the court's previous order, plaintiff has chosen to invoke the state procedure by having substituted service of process made upon the Secretary of the State of Tennessee, in accordance with T.C.A. § 20–223.

Defendant International contends that § 20–223 is constitutionally invalid, and that, therefore, the process served pursuant to its provisions should be quashed. Before this question of federal constitutional interpretation is reached, however, the court must determine whether this defendant is amenable to process under the law of Tennessee. Smartt v. Coca Cola Bottling Corp., 318 F.2d 447 (6th Cir. 1963); Arrowsmith v. United Press

International, 320 F.2d 219 (2d Cir. 1963).

Section 20–223 and the case law thereunder prescribe three circumstances which must exist before an unincorporated association is amenable to process under its provisions. First, the association must have done business in the State; second, the cause of action must have arisen out of such business; and third, the defendant must have failed to appoint an agent for service of process.[2] The International contends that these requirements are "pre-requisites" to the application of § 20–223, and that the plaintiff must affirmatively establish the existence of these requirements before the statute can be invoked and before a non resident association is amenable to process in the State.

The court finds no basis for this contention. Although there are certain sections of the Tennessee Code which require the plaintiff to establish a factual basis for the issuance of process in some situations, *e. g.,* T.C.A. §§ 20–207 and 20–219, the court knows of no reason under State law for adding such a requirement to § 20–223 by judicial fiat. Moreover, it appears from the record that the plaintiff has made some preliminary showing of the circumstances required by § 20–223. Plaintiff has filed with the court the affidavit of the Circuit Court Clerk of Davidson County, Tennessee, indicating that the International has failed to appoint an agent for service of process. The allegations of the complaint, although vague and unspecific with regard to the International's activities in Tennessee, would seem to be sufficient to meet the requirements of § 20–223, particularly in the absence of any allegation by the International that it does not have the contacts with this State which that section contemplates. Therefore, the court is of the opinion that, un-

2. It would appear that an unincorporated association could be amenable to process in Tennessee, irrespective of the requirements of T.C.A. § 20–223, under the provisions of the recently enacted long-arm statute, T.C.A. § 20–235. Since the parties have not suggested such a possibility, this question is not before the court.

der the record as it now stands, the International is amenable to process under the law of Tennessee.

 The International next contends that § 20–223, as applied to authorize service of process against a foreign unincorporated association, is violative of its rights under the Fourteenth Amendment to the Constitution of the United States. It is well settled that, in order for a state to exercise personal jurisdiction over a foreign defendant, such defendant must have established certain "minimal contacts" with the state so that the exercise of jurisdiction by the state does not conflict with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945). The International has not suggested the absence of such minimal contacts between it and the State of Tennessee.[3] Instead, it challenges the constitutionality of § 20–223 on the ground that the statute does not require a showing, before process is issued, that the foreign defendant has the requisite "minimal contacts" with the State. Since no preliminary showing of contact with the State is required, the International's argument continues, a defendant can be "dragged" into the courts of Tennessee to defend a law suit at the whim of a plaintiff, and in violation of due process.

Upon consideration, the court is of the opinion that this contention is without merit. Although the statute does not require a preliminary showing of the defendant's contacts with the State, this does not deprive the defendant of its constitutional rights. The defendant, as the International has done here, may challenge the sufficiency of the complaint in light of the requirements of § 20–223 without subjecting itself to the jurisdiction of the court. Further, the defendant, by denying the existence of the minimal contacts required by the Fourteenth Amendment and requesting a hearing on the question of jurisdiction, can receive a determination of constitutionality of the exercise of jurisdiction by the State before the case proceeds on its merits. This the International has not done.

Therefore, the court is of the opinion that the motion of International to quash service of process and dismiss the action is not well taken, and, accordingly, it is denied.

It is so ordered.

---

3. The Tennessee courts have held that the requirements of T.C.A. § 20–223 do not fall short of the minimal contacts test set forth in International Shoe. McDaniel v. Textile Workers Union of America (CIO), 36 Tenn.App. 236, 254 S.W.2d 1 (1952); International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL-CIO v. American Metal Products Company, Inc., Tenn.App., 408 S.W.2d 682 (1964).