IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 1, 2020

## GWENDOLYN H. KING v. BANK OF AMERICA, N.A., ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-0580-3          JoeDae L. Jenkins, Chancellor**

---

### No. W2018-01177-COA-R3-CV

---

Following two unsuccessful lawsuits filed by the instant plaintiff in federal district court, a foreclosure on the plaintiff's home, and a successful unlawful detainer action filed in general sessions court by the purchaser of the home at foreclosure, the plaintiff filed this action against multiple defendants in the chancery court, seeking an order setting aside the foreclosure and a temporary injunction prohibiting her eviction. Following a hearing, the trial court dismissed the instant action on the basis of *res judicata*. The plaintiff has appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

Gwendolyn H. King, Memphis, Tennessee, Pro Se.

Frankie N. Spero, Nashville, Tennessee, for the appellee, Bank of America, N.A.

S. Joshua Kahane, Memphis, Tennessee, for the appellees, ARVM 5, LLC, and Main Street Renewal, LLC.

Kavita Shelat, Memphis, Tennessee, for the appellees, The Bank of New York Mellon and Select Portfolio Servicing, Inc.

Natalie Brown, Memphis, Tennessee, for the appellee, Rubin Lublin, LLC.

**OPINION**

## I. Factual and Procedural Background

The plaintiff, Gwendolyn H. King, acting without benefit of counsel, commenced this action by filing a complaint in the Shelby County Chancery Court ("trial court") on April 18, 2018, seeking, *inter alia*, an order setting aside the foreclosure sale of her home, located at 1905 Kilarney Avenue in Memphis ("the Property"), and a temporary injunction prohibiting her eviction from the Property. Ms. King named as defendants Bank of America, N.A. ("Bank of America"); The Bank of New York Mellon f/k/a The Bank of New York for the Certificateholders of the CWABS, Inc., Asset Backed Certificates, Series 2004-15 ("New York Mellon"); Select Portfolio Servicing, Inc. ("Select Portfolio"); ARVM 5, LLC ("ARVM"); Main Street Renewal ("Main Street"); and Rubin Lublin, LLC ("Rubin Lublin") (collectively, "Defendants").

Ms. King averred in the complaint that the "original loan" ("the Loan") on the Property had been financed in 1986 and that her ex-husband, Harold King, had refinanced the Loan in 2004 through Florida Bancorp. According to the complaint, the Loan was transferred to Countrywide Financial Corporation ("Countrywide"), and upon Bank of America's purchase of Countrywide, Bank of America sent Mr. King a notice of acceleration in October 2008 after the loan had fallen into default. The Loan was released to Bank of America for mortgage servicing in 2011. Ms. King alleged that in July 2015, Bank of America had "illegally transferred" the Loan to Select Portfolio because the transfer was purportedly time-barred by operation of the federal Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. § 1692 *et seq.*

Ms. King averred in her complaint that concomitant with the entry of a divorce decree dissolving the Kings' marriage, Mr. King had executed a quitclaim deed conveying the Property to her in January 2013. Ms. King asserted that although not a borrower herself on the refinanced loan, she was the owner of the Property at that point and should have been protected from foreclosure. The November 2004 deed of trust ("the Deed of Trust"), which is in the appellate record as an attachment to a pleading filed by ARVM and Main Street, indicates that the borrowers were "Harold G. King and Gwendolyn H. King, husband and wife," who both executed the document. It is undisputed, however, that Ms. King did not execute the promissory note related to the Deed of Trust and that under the terms of the Deed of Trust, she was co-signing "only to mortgage, grant and convey [her] interest in the Property." The Deed of Trust also indicates that "Cash Out Mortgage Corp., a Florida Corporation d/b/a Sound Mortgage Group" ("Cash Out Mortgage") was the lender, Gail C. Victory was the trustee, and the amount borrowed was $84,000. The Deed of Trust was recorded by the Shelby County Register of Deeds on November 29, 2004.

New York Mellon, which had been assigned the Deed of Trust by Cash Out Mortgage in July 2011, foreclosed on the Property on October 5, 2017. A substitute trustee's deed, also in the appellate record as an attachment to a pleading filed by ARVM and Main Street, indicates that Rubin Lublin had become a "duly appointed" substitute trustee in the place of Gail C. Victory. Following purported nonpayment of the Loan after a demand made to the Kings, the substitute trustee's deed indicates conveyance of the Property at the foreclosure sale to ARVM for a total purchase price in the amount of $60,000. The substitute trustee's deed was duly recorded on November 8, 2017. Ms. King averred in her complaint that she had been served with a detainer warrant on March 8, 2017, with contact information for Main Street, which was undisputedly serving as ARVM's manager of the Property.

In her complaint, Ms. King alleged that New York Mellon had not been the rightful holder of the Deed of Trust at the time of the foreclosure sale, and she asserted claims of (1) violation of the FDCPA, (2) illegal flipping, (3) constructive fraud, (4) slander of title, (5) fraud, (6) violations of statutes of limitation for sale of Property pursuant to Tennessee Code Annotated §§ 28-2-111(a) (2017) and 28-3-109(a)(3) (2017), (7) wrongful foreclosure, and (8) taint on the Property's chain of title. Ms. King requested that the trial court (1) set aside the foreclosure sale and eviction, (2) award her title to the Property, (3) release the lien, (4) cancel the note related to the Deed of Trust, (5) remove "all negative reporting to credit bureaus," (6) award "maximum compensatory and punitive damages," and (7) award to her the costs involved in the litigation. Upon Ms. King's request, the trial court entered a temporary restraining order against Bank of America's eviction proceedings pending a hearing set for May 9, 2018.

On May 4, 2018, ARVM and Main Street filed a motion to dismiss, pursuant to Tennessee Rule of Civil Procedure 12.02(6), and a response in opposition to Ms. King's request for a temporary restraining order. In support of the motion to dismiss, they asserted that Ms. King had failed to state a claim upon which relief could be granted based upon the doctrine of *res judicata*. Also asserting that ARVM was a bona fide purchaser of the Property, ARVM and Main Street requested that the trial court dismiss Ms. King's complaint with prejudice, deny her application for injunctive relief, and/or release ARVM and Main Street from this action.

Among the documents attached to ARVM and Main Street's response was a copy of an order entered by the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") on March 28, 2018, denying a motion Ms. King had filed in that court to proceed *in forma pauperis* on appeal from a dismissal of an action she had filed in the United States District Court for the Western District of Tennessee ("district court") in June 2017. In the order, the Sixth Circuit noted that the magistrate's determination that

Ms. King's "claims were barred by res judicata because she had previously filed a complaint in the Shelby County Chancery Court against the Bank of New York Mellon and Bank of America which was removed to the United States District Court for the Western District of Tennessee and eventually dismissed on a motion by defendants" had been adopted by the district court judge.

The Sixth Circuit further noted that the previous action, *King v. Bank of N.Y. Mellon*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. Feb. 12, 2016) ("First Action"), had been filed by Ms. King and Mr. King in 2015, alleging "negligence and violations of HAMP [Home Affordable Modification Program], the SCRA [Servicemembers Civil Relief Act], and the Tennessee Consumer Protection Act," as well as alleging violation of "Tennessee law by not entering into mandatory mediation with [Ms. King] and fraudulently corroborat[ing] with Memphis Area Legal Services to prevent [Ms. King's] efforts to save her home from foreclosure." According to the Sixth Circuit's March 2018 order, the district court had denied a motion filed by Ms. King for an extension of time in which to file objections to the magistrate's findings and a motion for reconsideration. The district court had also certified that an appeal could not be taken in good faith, pursuant to 28 U.S.C. § 1915 (a)(3), denying Ms. King's motion to proceed *in forma pauperis* in the second federal action ("Second Action") upon determining that Ms. King's "appeal lack[ed] an arguable basis in law." As Defendants note, Ms. King had filed her complaint in the Second Action contemporaneously with her untimely notice of appeal in the First Action.

In the instant action, Bank of America subsequently filed a response and notice that it was joining in the motion to dismiss filed by ARVM and Main Street, along with copies of additional pleadings and orders related to the First Action and Second Action. Adding to ARVM and Main Street's *res judicata* argument, Bank of America asserted that the instant action was precluded not only by the resolution on the merits of the First Action and Second Action, but also by the adjudication on the merits of a 2017 detainer action against Ms. King ("Detainer Action"), which had been filed in the Shelby County General Sessions Court ("general sessions court") by Main Street on February 27, 2018. The general sessions court had entered a possessory judgment in favor of Main Street concerning the Property in the Detainer Action on April 18, 2018, the same day that Ms. King filed the instant action.

The trial court in the instant action conducted a hearing on May 9, 2018, during which the parties presented oral arguments. The trial court entered a judgment on May 18, 2018, dismissing Ms. King's complaint with prejudice, denying her application for a temporary injunction, and dissolving and terminating the previously entered temporary restraining order. The trial court noted that upon oral motion during the hearing, it had allowed Select Portfolio, New York Mellon as trustee, and Rubin Lublin to join in and

4

adopt the two previously filed motions to dismiss. In its judgment, the trial court authorized Main Street, on behalf of ARVM, "to proceed with filing a writ of possession through the [general sessions court] and executing a forcible dispossession of [Ms. King] from [the Property]." In dismissing Ms. King's complaint and finding that she would not be able to demonstrate that she was entitled to a Tennessee Rule of Civil Procedure 65.04 temporary injunction, the trial court found that Ms. King's claims were "all barred and precluded under the doctrine of *res judicata* by virtue of the final judgments on the merits entered" in the First Action, Second Action, and Detainer Action. The trial court specifically found that "[t]hese three final judgments on the merits were rendered by courts of competent jurisdiction, and the three lawsuits in which these judgments were entered involved the same parties or their privies and the same cause of action as [Ms. King's] current action."

Ms. King filed a "Motion to Request Reconsideration" of the trial court's judgment on June 18, 2018, requesting a new hearing. Two days later, she filed a notice of appeal to this Court, and Defendants subsequently filed a joint response in opposition to the motion for reconsideration in the trial court. Defendants attached to their response a copy of an order entered by the Shelby County Circuit Court ("circuit court") on June 19, 2018, dismissing with prejudice an appeal that Ms. King had filed in the Detainer Action. Following a hearing, the circuit court found that Ms. King had filed her appeal from general sessions court outside the ten-day appeal period provided under Tennessee Code Annotated §§ 29-18-128 (2012) and 27-5-108 (Supp. 2020) and without paying the bond or costs required by statute. Upon review of the arguments presented, "as well as the briefs and motions filed by the parties, the pleadings, and the record in this case," the circuit court also found that Ms. King's claims were barred by *res judicata*.

In the instant action, the trial court entered an order denying Ms. King's motion to reconsider on July 10, 2018. This Court subsequently treated Ms. King's notice of appeal, which had been premature in light of the filing of her motion to reconsider, as timely pursuant to Tennessee Rule of Appellate Procedure 4(d) ("A prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof."). In response to a notice that no transcript would be filed by Ms. King and a motion to strike subsequently filed by Defendants, the trial court entered an order on November 2, 2018, granting Defendants' motion to strike filings attached to Ms. King's notice that the court found to be "procedurally improper." The trial court concluded that pursuant to Tennessee Rule of Appellate Procedure 24(d), "no transcript or statement of the evidence is to be filed in this action with respect to [Ms. King's] appeal." We note that Ms. King has filed a "Statement of Evidence" with her appellate brief that includes several documents not in the record. In light of the trial court's ruling and pursuant to Tennessee Rule of Appellate Procedure 24, this Court will not consider Ms. King's statement of the evidence. *See, e.g.*, *Jennings v. Sewell-Allen*

5

*Piggly Wiggly*, 173 S.W.3d 710, 712 (Tenn. 2005) ("This attachment [to an appellate brief] . . . does not serve to supplement the record on appeal.").[1]

During the pendency of this appeal and upon Bank of America's motion to dismiss, this Court entered an order on January 31, 2019, denying the motion to dismiss as "premature and inadvisable." Following the filing of several motions but no appellate brief in this Court by Ms. King, she attempted to file a "Motion to Set Aside and Void Detainer Warrant" in May 2019, which this Court did not accept for filing because it appeared to be filed pursuant to Tennessee Rule of Civil Procedure 60.02. Ms. King subsequently filed a motion to "stay" appellate proceedings. This Court entered an Order on July 15, 2019, denying Ms. King's request to stay appellate proceedings and directing her to file her principal brief within ten days of the order's entry or show cause why the appeal should not be dismissed.

On July 29, 2019, Ms. King filed her principal brief and also filed a motion to, *inter alia*, "transfer" to the trial court the motion to set aside that she had previously attempted to file. This Court entered an order on August 1, 2019, granting the portion of Ms. King's motion that it interpreted as a motion to late file her appellate brief but noting that this Court could not "transfer" a motion that it had not accepted for filing. This Court eventually entered an order on October 22, 2019, granting another motion filed by Ms. King that it treated as one "to remand this appeal to the trial court for the limited purpose of entertaining [her] Tennessee Rule of Civil Procedure 60.02 motion." Upon the trial court's subsequent filing of two affidavits of dormancy, certifying that Ms. King had not filed a Rule 60.02 motion in the trial court, this Court resumed jurisdiction over the appeal.

## II. Issues Presented

Ms. King presents three issues on appeal, which we have reordered and restated as follows:

1.  Whether the trial court erred by dismissing Ms. King's claims upon finding that Ms. King had failed to state a claim upon which relief could be granted under the doctrine of *res judicata*.[2]

---

[1] We note that Defendants have filed an "Appendix" to their brief, appearing to consist entirely of documents that are already in the record. We emphasize that this Court reviews the record on appeal as it is filed by the trial court. *See* Tenn. R. App. P. 13(c); Tenn. R. App. P. 24(a), (e); *Jennings*, 173 S.W.3d at 712.

[2] Ms. King has stated this issue as: "Whether the Judge considered any of King's claims."

2.    Whether the trial court erred by denying due process rights to Ms. King.

3.    Whether the trial court abused its discretion by revoking the temporary restraining order.

Defendants have presented the following additional issue:

4.    Whether the trial court abused its discretion in denying Ms. King's application for a temporary injunction pursuant to Tennessee Rule of Civil Procedure 65.04.

### III.  Standard of Review

As our Supreme Court has explained with regard to motions seeking dismissal of a complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6):

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence.  The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone.  A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"

> In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'"  A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."  We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal citations omitted).  As to *res judicata*, "[a] trial court's decision that a claim is barred by the doctrine of res judicata or claim preclusion involves a question of law which will be reviewed de novo on appeal without a presumption of correctness." *Jackson v. Smith,* 387 S.W.3d 486, 491 (Tenn. 2012) (citing *In re Estate of Boote,* 198 S.W.3d 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005)).

A "trial court's decision regarding whether to grant injunctive relief is reviewed under an abuse of discretion standard." *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 466 (Tenn. Ct. App. 2009). Appellate courts review a trial court's discretionary decision to determine "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008)).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). Pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Although parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

IV. *Res Judicata*

Ms. King contends that the trial court erred by dismissing her complaint for failure to state a claim upon which relief could be granted based on the doctrine of *res judicata*. As stated in her issue, Ms. King has raised a question as to whether the trial court "considered any of [her] claims" before dismissing her complaint. Upon careful review, we conclude that the trial court properly considered Ms. King's claims in determining that this action was barred by *res judicata*.

Our Supreme Court has explained the doctrine and essential requirements of *res judicata* as follows:

> The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit. *Creech v. Addington,* 281 S.W.3d 363, 376 (Tenn. 2009); *Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn. 1995) (quoting *Goeke v. Woods,* 777 S.W.2d 347, 349 (Tenn. 1989)). It is a "rule of rest,"

8

*Moulton v. Ford Motor Co.,* 533 S.W.2d 295, 296 (Tenn. 1976), and it promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits. *In re Estate of Boote,* 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005); *Sweatt v. Tennessee Dep't of Corr.,* 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002).

The party asserting a defense predicated on res judicata or claim preclusion must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits. *Lien v. Couch,* 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *see also Lee v. Hall,* 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990).

*Jackson v. Smith,* 387 S.W.3d 486, 491 (Tenn. 2012).

As the *Jackson* Court noted, *res judicata* "is one of the affirmative defenses that must be included in the defendant's answer," pursuant to Tennessee Rule of Civil Procedure 8.03. *Id.* at 491. However, a Tennessee Rule of Civ. P. 12.02(6) motion to dismiss may "be used as a vehicle to assert an affirmative defense" when "the applicability of the defense . . . 'clearly and unequivocally appear[s] on the face of the complaint.'" *Id.* at 492 (quoting *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 404 (Tenn. 2002)).

In this case, Defendants asserted *res judicata* as a basis for dismissal in their respective motions to dismiss, utilizing those motions as vehicles to assert the affirmative defense. We determine this to have been proper because in Ms. King's complaint, she referenced the First Action and the Second Action, noting that at the time of her filing the instant action, resolution of her appeal was "still pending in the Sixth Circuit Court." In her complaint, Ms. King also detailed the general sessions court proceedings involving the Detainer Action, stating that at the time of her complaint's filing, "[t]he [Detainer] Case was also appealed" to circuit court. *See Jackson*, 387 S.W.3d at 492 (explaining that in order for *res judicata* to be properly raised in a defendant's motion to dismiss, "the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief.").

In determining that Ms. King's instant complaint was precluded by *res judicata*, the trial court found in pertinent part:

[Ms. King's] claims in the Complaint, including, without limitation, her claims relating to the servicing of the subject loan, the alleged wrongful and unlawful foreclosure proceedings, the foreclosure sale and purchase of the subject property, and the alleged wrongful eviction lawsuit and subsequent dispossession efforts, are all barred and precluded under the doctrine of *res judicata* by virtue of the final judgments on the merits entered in the following three (3) prior lawsuits: *King v. The Bank of New York Mellon, et al.*, Case No. 2:15-cv-02432 (U.S. District Court, Western District of Tennessee); *King v. The Asset-Bank of New York Mellon f/k/a The Bank of New York et al.*, Case No. 2:17-cv-2402 (U.S. District Court, Western District of Tennessee), and the unlawful detainer action filed by Defendant Main Street Renewal, LLC on behalf of Defendant ARVM 5, LLC in the General Sessions Court for Shelby County, Tennessee, Docket No. 1912751, in which a final judgment granting possession of the subject property to ARVM 5, LLC was entered on April 18, 2018. These three final judgments on the merits were rendered by courts of competent jurisdiction, and the three lawsuits in which these judgments were entered involved the same parties or their privies and the same cause of action as [Ms. King's] current action.

On appeal, Ms. King has presented no argument to refute the trial court's findings that the prior three judgments were (1) rendered by courts of competent jurisdiction, (2) involved the same parties or their privies as in the instant action, (3) involved the same claims or causes of action, and (4) were final. *See Jackson,* 387 S.W.3d at 491. At the outset, we note that upon a thorough review of the record, we discern no reason to disturb the trial court's findings as to these elements of competent jurisdiction, the parties or their privies, the same claims or causes of action, and the finality of the judgments in the prior three lawsuits. In the argument section of her appellate brief devoted to *res judicata*, Ms. King has essentially reiterated the claims stated in her complaint, asserting relevant to *res judicata* only that the prior lawsuits were not adjudicated "on the merits." *See id..* We disagree.

In the First Action, the district court stated in its final judgment that it had adopted the magistrate's report and recommendation to dismiss the Kings' complaint upon *de novo* review and with consideration of "the entire record of the proceedings." Summarizing the Kings' claims in the First Action and the magistrate's rationale for dismissing them, the district court stated in pertinent part:

[The magistrate] construed the first amended complaint as asserting claims under the Home Affordable Modification Program ("HAMP"), 12 U.S.C. § 5201; the [Servicemembers] Civil Relief Act ("SCRA"), 50

10

U.S.C. § [3901 *et seq.*]; the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. [§] 47-18-104(b)(27); and Tennessee state law. [The Kings] also claimed that Defendants "fraudulently corroborated with [Memphis Area Legal Services] to stall, mislead and circumvent [Ms. King] in her efforts to save her home."

As for the HAMP claim, [the magistrate] correctly noted that homeowners do not have a private right of action to enforce the terms of HAMP. [*See Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 298 (6th Cir. 2015)]. [The Kings] also do not have a private right of action under the TCPA. [Tenn. Code Ann. § 47-18-104(b)(27).]

[The Kings] failed to state a claim under the SCRA because any protection proved by that Act applies only to an obligation on real property that "originated before the period of the servicemember's military service." [50 U.S.C.[A.] § [3953](a)(1).] [Mr. King's] military service pre-dates his execution of the Note and Deed of Trust that are at issue in this case.

[The Kings] failed to state a common law negligence claim because there is no common law duty ["]on financial institutions with respect to their customers, depositors, or borrowers in Tennessee." [*See Vaughter v. BAC Home Loans Serving, LP*, 2012 WL 162398, at *4 (M.D. Tenn. Jan. 19, 2012) (quoting *Permobil, Inc. v. Am. Express Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008)).] Finally, [the Kings] failed to "state with particularity the circumstances constituting fraud." [Fed. R. Civ. P. 9(b). *See also Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) ("Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b).")]

[The Kings] have presented no facts or law to show that the Report and Recommendation should not be adopted.

(Footnotes converted to bracketed citations.)

Although Ms. King attempted to appeal this final judgment, the Sixth Circuit in an order entered on July 20, 2017, dismissed the appeal for lack of subject matter jurisdiction due to untimeliness, confirming that the district court's order in the First Action was indeed final upon the passage of the time for initiating an appeal pursuant to Federal Rule of Appellate Procedure 4(a). We determine that without question, the First Action was adjudicated on the merits by the District Court. Moreover, we note that if all elements of *res judicata* were satisfied, the adjudication on the merits of the First Action

was sufficient to bar the instant action irrespective of the Second Action and the Detainer Action.

Although the element of the same parties or their privies has not been expressly raised by Ms. King, we note that Defendants in the instant action were either defendants in the First Action, specifically Bank of America and New York Mellon, or they are now privies in interest with one of the defendants in the First Action. As this Court has explained concerning the definition of privies:

In *Cotton v. Underwood,* 223 Tenn. 122, 442 S.W.2d 632 (1969), our Supreme Court stated that "privies are not only those who are so related by blood and law, but are those who are so related by reason of the facts showing an identity of interest." *Id.* at 634-35. The Court went on to explain that:

> Privies [are] [p]ersons who are partakers or have an interest in any action or thing, or any relation to another. . . . There are several kinds of privies: namely, privies in blood, as the heir is to the ancestor; privies in representation, as is the executor or administrator to the deceased; privies in estate, as the relation between the donor and donee, lessor and lessee; privies in respect to contracts; and privies on account of estate and contract together. . . . Privies have also been divided into privies in fact and privies in law. . . . The latter are created by the law casting land upon a person, as in escheat . . . .

*Id.* at 635, n.1 (internal citations omitted).

In *Fultz v. Fultz,* 180 Tenn. 327, 175 S.W.2d 315 (1943), our Supreme Court noted that "[t]he term privity denotes mutual . . . relationship to the same rights of property. The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party is that they are identified with him in interest, and whenever this identity is found to exist, all are alike concluded." *Id.* at 316 (citing 24 Am. & Eng. Ency. Law, p. 746). In keeping with the definition of privies as those in mutual relationship to the same rights of property, this Court, in *Pers. Loan & Fin. Co. v. Kinnin,* 56 Tenn. App. 481, 408 S.W.2d 662 (1966), *perm. app. denied* (Tenn. Nov. 17, 1966), relied upon the Black's Law Dictionary to define privity as a "derivative interest ***founded on or growing out of contract, connection or***

**bond of union between the parties, mutuality of interest.**" *Kinnin,* 408 S.W.2d at 664 (emphasis added).

*Collier v. Greenbrier Developers, LLC*, 358 S.W.3d 195, 199-200 (Tenn. Ct. App. 2009).

In this matter, Select Portfolio acquired the Loan from Bank of America in 2015, sharing a privity of interest as the successor creditor; ARVM purchased the Property from New York Mellon at the foreclosure sale, sharing a privity of interest in its ownership of the Property; Main Street acted as ARVM's agent in managing the Property, sharing a contractual privity as to the Property; and Rubin Lublin, as the substitute trustee, held legal title to the Property in trust for ARVM. *See, e.g., Ralph v. Scruggs Farm Supply LLC*, 470 S.W.3d 48, 53-54 (determining within a *res judicata* analysis, that a trust receiving transfer of real estate serving as security shared privity of interest with the plaintiff owners of the property and that "[b]y the very nature of his appointment as Substitute Trustee," an individual was in privity with the trustee for whom he substituted).

In asserting that the prior lawsuits were not adjudicated "on the merits," Ms. King's argument may be interpreted as positing that the trial court erred in dismissing the instant action because not all claims raised by her in the instant complaint were addressed in prior actions. We emphasize that *res judicata* bars "all issues which were, <u>or could have been</u>, litigated in the former suit." *Jackson,* 387 S.W.3d at 491 (emphasis added). Moreover, as Defendants note, Tennessee courts have adopted the "transactional standard" in determining whether a cause of action is the same for purposes of *res judicata. See Parvin v. Newman*, 518 S.W.3d 298, 307 (Tenn. Ct. App. 2016) (citing *Creech*, 281 S.W.3d at 379-80). The transactional standard provides:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Creech*, 281 S.W.3d at 379-80 (quoting Restatement (Second) of Judgments § 24(1)). As the *Creech* Court explained:

> Like many of the other states adopting the transactional approach, we observe that even where two claims arise out of the same transaction, the second suit is not barred by res judicata unless the plaintiffs had the opportunity in the first suit to fully and fairly litigate the particular issue giving rise to the second suit. For example, when a plaintiff is initially

unaware of the existence of a cause of action due to the defendants' own concealment or misrepresentation, whether fraudulent or innocent, a second cause of action is appropriate. Restatement (Second) of Judgments § 26 cmt. j. "The result is different, however, where the failure of the plaintiff to include the entire claim in the original action was due to a mistake, not caused by the defendant's fraud or innocent misrepresentation." *Id.*

*Id.* at 382 (footnote omitted).

The trial court in this case found that the three prior judgments all involved "the same cause of action as [Ms. King's] current action," essentially finding that the claims in the three prior actions all arose from the same transaction. We agree. In the magistrate's report and recommendation adopted by the district court in the Second Action, the magistrate stated the following in pertinent part:

> King's allegations in the instant complaint are identical to the allegations in the first lawsuit, and thus, her complaint should be dismissed under the doctrine of res judicata.
>
> * * *
>
> Both of King's lawsuits arise out [of] the foreclosure sale of the same property. Apart from King's fifth claim of intentional misrepresentation of SCRA benefits alleged in the instant case, discussed *infra*, all of the other claims relate to the same set of facts asserted in King's first lawsuit. King's negligent-misrepresentation claim was also asserted by King in the first lawsuit and dismissed by the court. Although King did not assert an intentional-infliction-of-emotional-distress claim or an ECOA [Equal Credit Opportunity Act] claim in the first lawsuit, these claims arise from the same series of transactions, and thus, were previously available to King. She should have litigated these causes of action in her first lawsuit and may not litigate them here.
>
> * * *
>
> Because the loan did not originate before the period of Harold King's military service, the SCRA does not apply. Therefore, King's intentional-misrepresentation-of-SCRA-benefits claim based on representations made by the Bank of New York Mellon and the Bank of America in their motion to dismiss King's first complaint fails to state a claim upon which relief can be granted.

14

(Internal citations omitted.)

In the instant complaint, Ms. King has again made identical allegations arising from the same transaction: the foreclosure sale or impending foreclosure sale of the Property. She has refashioned the allegations to assert claims not stated as such in the First Action or Second Action, namely (1) violation of the FDCPA, (2) "illegal flipping," (3) slander or "taint" on the Property's title, (4) violations of statutes of limitation in sale of the Property, and (5) wrongful foreclosure. All of these claims arise from the same transaction as the claims in the First Action, and all could have been litigated in the First Action. Ms. King posits that the trial court erred in the instant action by declining to "consider any of [her] claims." To the contrary, we determine that the trial court properly declined to consider Ms. King's claims upon determining that all arose from the same transaction and either had been adjudicated or could have been litigated previously.

Ms. King has also raised two claims in the argument section of her brief on appeal that she did not raise before the trial court: that Defendants were unjustly enriched by the sale of the Property and that Mortgage Electronic Registration Systems, Inc. ("MERS"), did not have the authority to transfer or assign the Deed of Trust to New York Mellon. We find these claims to be waived on appeal in that they were not presented to or decided by the trial court. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . .")

Moreover, we determine that both the unjust enrichment argument and the argument concerning the assignment of the Deed of Trust arose from the same transaction involving the foreclosure sale or pending foreclosure sale and, as with the other issues set forth above, could have been raised by Ms. King in the First Action. *See Bank of New York Mellon v. Berry*, No. W2017-01213-COA-R3-CV, 2018 WL 930967, at *4 (Tenn. Ct. App. Feb. 15, 2018), *perm. app. denied* (Tenn. June 8, 2018) (determining in a wrongful detainer action that the defendant's challenges to the plaintiff bank's ownership of her note and to the assignment of the related deed of trust were barred by *res judicata* because "[b]ased on the transactional approach Tennessee follows, [the defendant] was required to present all of her arguments regarding her challenge to the foreclosure of the Property in her [prior] lawsuit").[3]

---

[3] As Defendants note, this Court had also concluded in an earlier appeal involving the same matter that the defendant's claim regarding the assignment of the deed of trust was in part barred because she did not have standing to challenge an assignment to which she had not been a party. *See Bank of New York Mellon*, 2018 WL 930967, at *4 (citing *Berry v. Mort. Elec. Reg. Sys.*, No. W2014-02175-COA-R3-CV, 2015 WL 5121542, at *3 (Tenn. Ct. App. Aug. 31, 2015), *mem. op.*)). Having determined that Ms.

Although this matter was adjudicated with finality on the merits in the First Action, we conclude that the trial court was also correct to find that the district court's judgment in the Second Action operated as an adjudication on the merits. *See Creech*, 281 S.W.3d at 378 ("In Tennessee, any dismissal of a claim other than a dismissal for lack of jurisdiction, for lack of venue, or for lack of an indispensable party 'operates as an adjudication upon the merits,' unless the trial court specifies otherwise in its order for dismissal.") (quoting Tenn. R. Civ. P. 41.02(3)). As the Sixth Circuit noted in its March 2018 order, the district court dismissed the Second Action upon the magistrate's recommendation after the magistrate had screened Ms. King's complaint *sua sponte*, pursuant to 28 U.S.C. § 1915(e), for failure to state a claim for relief and had determined that Ms. King's claims "were barred by res judicata" based on the First Action.[4] Although not prompted by a motion to dismiss, as with a Rule 12.02(6) motion, the purpose of the district court magistrate's screening was "to test the legal sufficiency of the complaint." *Cf. Creech*, 281 S.W.3d at 378. ("Unlike the dismissal of a complaint on procedural or technical grounds, '[t]he sole purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to test the legal sufficiency of the complaint.'") (quoting *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992)).

The trial court also found that the Detainer Action operated as *res judicata* to the instant action, and we agree. ARVM filed its complaint in the Detainer Action against Ms. King to obtain possession of the Property, which it had purchased at the foreclosure sale. The general sessions court granted possession of the Property to ARVM in its judgment entered on April 18, 2018, and Ms. King failed to perfect an appeal from the general sessions judgment to the circuit court. In dismissing the appeal, the circuit court found that Ms. King's defenses to the Detainer Action, "including without limitation, the claims for alleged wrongful eviction lawsuit and subsequent dispossession efforts, are all barred and precluded under the doctrine of *res judicata* . . . ."

As Defendants posit, a wrongful foreclosure action may be barred by *res judicata* if it could have been litigated within a previously adjudicated detainer action. *See Boyce v. LPP Mortg. Ltd.*, 435 S.W.3d 758, 769 (Tenn. Ct. App. 2013) (determining that the plaintiffs' "allegations regarding the merits of title were barred by the doctrine of *res judicta*" based upon a previously adjudicated detainer action awarding possession of the

King's argument regarding the Deed of Trust is waived and, in any case, arose from the same foreclosure transaction, we decline to address Defendants' argument concerning standing.

[4] In relevant part, 28 U.S.C. § 1915(e)(2)(B)(ii) provides in relation to federal proceedings *in forma pauperis*, that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted[.]"

property at issue to the defendant); *see also Foster v. Fed. Nat'l Mortg. Ass'n*, No. E2012-02346-COA-R3-CV, 2013 WL 3961193, at *1 (Tenn. Ct. App. July 31, 2013) ("We affirm the judgment of the trial court because the plaintiffs could and should have raised the issues pertaining to the alleged wrongful foreclosure in the earlier detainer action.").

We emphasize that we respect Ms. King's decision to proceed *pro se* and have measured her pleadings "by less stringent standards than those applied to pleadings prepared by lawyers." *See Stewart*, 368 S.W.3d at 462. However, "[t]he primary purposes of the doctrine" of *res judicata* "to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits" must prevail. *See Creech*, 281 S.W.3d at 376. Upon a thorough review of the record and applicable authorities, we conclude that the trial court did not err in dismissing the instant action upon finding that it was barred by the principles of *res judicata*.

## V. Remaining Issues

Ms. King has raised an issue regarding her due process rights, asserting that she "was denied due process in that she did not have the opportunity to request production of documents or submit interrogatories to build [her] case and find out who really holds the note, the main reason for filing the Complaint in [the trial court]." Having determined that the trial court properly found this action to be barred by *res judicata*, we further determine that any issue concerning Ms. King's due process rights in seeking discovery is pretermitted as moot.

Ms. King has also raised an issue concerning the trial court's termination of the temporary restraining order it had entered against eviction proceedings pending a hearing on Ms. King's complaint. Defendants have expanded this issue to argue that the trial court property denied Ms. King's application for a temporary injunction pursuant to Tennessee Rule of Civil Procedure 65.04, which provides in pertinent part:

> (2) **When Authorized.** A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

17

Again, having determined that the trial court properly found this action to be barred by *res judicata*, we further determine that any issue regarding the trial court's denial of Ms. King's request for an injunction prohibiting Ms. King's eviction from the Property is pretermitted as moot.

## VI.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court dismissing this action.  We remand this case for enforcement of the judgment and collection of costs below.  Costs on appeal are taxed to the appellant, Gwendolyn H. King.


s/ Thomas R. Frierson_____
Thomas R. Frierson, II, JUDGE